718 So.2d 761 (1998)
STATE of Florida, Petitioner,
v.
Ronnie HOGGINS, Respondent.
No. 90121.
Supreme Court of Florida.
September 17, 1998.
*762 Robert A. Butterworth, Attorney General, Celia A. Terenzio, Assistant Attorney General, Chief, West Palm Beach Bureau, and Melynda L. Melear and Joseph A. Tringali, Assistant Attorneys General, West Palm Beach, for Petitioner.
Richard L. Jorandby, Public Defender, and Paul E. Petillo, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for Respondent.
KOGAN, Justice.
We have for review Hoggins v. State, 689 So.2d 383 (Fla. 4th DCA 1997), in which the district court certified the following question as one of great public importance:
DOES FLORIDA CONSTITUTION, ARTICLE I, SECTION 9, PREVENT THE IMPEACHMENT OF A TESTIFYING DEFENDANT WITH THE DISCLOSURE OF A DEFENDANT'S PRE-MIRANDA[[1]] SILENCE WHILE IN CUSTODY?
Id. at 386-87. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We rephrase the question as follows:
DOES FLORIDA CONSTITUTION, ARTICLE I, SECTION 9, PREVENT THE IMPEACHMENT OF A TESTIFYING DEFENDANT WITH THE DEFENDANT'S SILENCE MAINTAINED AT THE TIME OF ARREST BUT PRIOR TO THE RECEIPT OF MIRANDA WARNINGS?
We answer the question as rephrased in the affirmative and approve the decision of the district court for the reasons stated herein.
On September 10, 1993, a man entered a convenience store with a gun and threatened to kill the two store clerks if they did not hand over the money in the register. The man absconded with the cash register drawer and a cigar box containing lottery tickets. As he left the store, the man fired two shots in the direction of one of the store clerks.
At approximately 12:30 a.m. that same evening, police officers observed a man on a bicycle carrying a cash register drawer and a cigar box. When the officers pursued the man, he wrecked the bicycle and fled into an apartment complex, carrying with him the cash register drawer and cigar box. The officers followed a trail of lottery tickets and food stamps to an apartment in the complex. The mother of Ronnie Hoggins' child lived in the apartment. She answered the door and *763 permitted the officers to search the apartment.
The officers found Ronnie Hoggins in an upstairs bedroom, handcuffed him, and brought him downstairs. One of the robbery victims, whom officers had transported to the apartment, identified Hoggins as the perpetrator. The robbery victim started yelling, "I want to kill you," and the officers had to restrain him. As the officers placed Hoggins under arrest, he began to struggle. The police then removed Hoggins from the apartment and read him Miranda warnings while placing him in the patrol car. The officers continued to search the apartment and uncovered the cash drawer and cigar box in the attic.
Hoggins testified at trial that on the night of the arrest he was visiting his child at the apartment where the officers found him. Hoggins said his bike had been stolen from the porch of the apartment earlier in the evening.[2] While sitting on the front steps, he saw someone run through the complex and hide something in the playground. He investigated and found the drawer and cigar box. He took the items back to the apartment, put them in the attic, and then lay down in another upstairs bedroom.
Over objection, the prosecution cross-examined Hoggins as to whether he previously had offered this account of events. Initially, the prosecutor asked: "You never told them, the police, this story that you just told the jury, did you?" Although the trial court overruled an objection raised by Hoggins, the prosecutor thereafter rephrased the question as: "You never told anyone at that time [after the burglary victim identified you] the story you just told us here today?" The trial court sustained an objection to the characterization of Hoggins' testimony as a "story," and the prosecutor again rephrased the question. This time the prosecutor asked: "You never told that to your counsel when you were identified as the guy that tried to kill him or rob the store, did you?" Hoggins responded: "No."
While the prosecutor's last question is somewhat confusing, due to the use of the term "to your counsel," the preceding questions imply that the prosecutor was trying to elicit whether Hoggins told the arresting officers the account of events he had given at trial. This interpretation is further supported by Hoggins' redirect examination, during which defense counsel asked Hoggins why he did not offer an explanation to the police in the apartment. Specifically, the following exchange occurred between Hoggins and his defense counsel:
Q. Why didn't you say something then about the cash drawer?
A. At that particular time I was scared. I mean, this guy had to do something big for like, six or seven cops to come in the house like that. All I could think about was that I needed a lawyer.
Q. And you know that it is your constitutional right to have a lawyer?
A. Yes.
On re-cross examination, the prosecutor first established that the police did not read Hoggins his Miranda rights in the apartment. The prosecutor then continued to question Hoggins as to whether he offered an explanation to the arresting officers.
Q. Okay. That's [the reading of Miranda warnings] not the issue here. The issue here is that you have just been involved in something very serious, and you didn't say anything?
A. I wasn't involved. [objection to question overruled]
Q. Isn't it true that you never told them your version of what happened on those two occasions?
A. I don't understand.
....
Q. Now, when you were in the upstairs bedroom and the police came up there, you never gave them the version that you have just given us today?
A. No, I didn't.
Q. When you were downstairs with the victim after the crime, you never gave that version either?
A. No, I guess
*764 In closing argument, the prosecutor again pointed out that Hoggins failed to tell his version of events to the police on the night of his arrest.
Now, when Mr. Hoggins gives his storyWhen you remember the story that he gave the other day, remember one thing, that the police arrived at that apartment to conduct a search. It was then that they found him hiding in the upstairs bedroom in the apartment of his girlfriend. Remember, he doesn't tell them that story at that time.
Now, when they bring him downstairs and have him confronted face to face with the victim, who is so outraged, ... saying "You tried to kill me," and that victim when confronted with him tries to go after this man, he never mentioned his story. [Objection overruled.]
Mr. Hoggins did not give them that story. Ronnie Hoggins, never did at that point say anything like, "Man, I didn't try to shoot you. I didn't rob your store. I just found that money and stuff and picked it all up and ran into the apartment."
Finally, during rebuttal closing argument, the prosecutor emphasized Hoggins' failure to come forward with the exculpatory explanation at any time prior to trial.
Not once does this Defendant give the police the count [sic] that he came up with when he took the witness stand today. He gave this statement under oath, but never anytime previous to today did he ever say this story to the police about how he came across this money and stuff..... Having been advised of his constitutional right he never mentioned one time this story he has said here today.[3]
Hoggins was convicted of attempted first-degree murder with a firearm, armed robbery, aggravated assault with a firearm, and resisting arrest without violence. On appeal, the court recognized that the Fifth and Fourteenth Amendments to the United States Constitution do not preclude the use of pre-Miranda silence for impeachment purposes; however, the court, relying on Webb v. State, 347 So.2d 1054 (Fla. 4th DCA), cert. denied 354 So.2d 986 (Fla.1977), held that the prosecutor's improper comments on Hoggins' custodial, pre-Miranda silence violated the due process guarantees found in article I, section 9 of the Florida Constitution.[4]Hoggins, 689 So.2d at 384-86. The court recognized that its decision might be construed as conflicting with Rodriguez v. State, 619 So.2d 1031 (Fla. 3d DCA 1993), review denied 629 So.2d 135 (Fla.1993), which found that impeachment with a defendant's prearrest, pre-Miranda silence did not violate the Fifth Amendment of the United States Constitution. Accordingly, the court certified the question of whether using custodial, pre-Miranda silence for impeachment purposes violates Florida's Constitution. Id. at 386. In addition, the court determined that Florida's evidentiary rules precluded the use of Hoggins' custodial, pre-Miranda silence for impeachment purposes, where Hoggins' silence was not inconsistent with the explanation offered by Hoggins at trial. Id. at 387-88. The court reversed Hoggins' convictions and remanded for a new trial. Id. at 388.
The State maintains this Court should construe Florida's Constitution consistently with the federal constitution and answer the certified question in the negative. Specifically, the State alleges that this case should be decided in accord with Fletcher v. Weir, 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), in which the Court held that where the record does not demonstrate when Miranda warnings were given, no due process violation occurs if a defendant takes the stand and is cross-examined as to his or her postarrest, pre-Miranda silence.[5]
*765 The State correctly asserts that the use of pre-Miranda silence for impeachment purposes does not violate the federal constitution. The United States Supreme Court has found that using prior silence to impeach a defendant's explanation subsequently offered at trial violates the Fourteenth Amendment only when the silence followed Miranda warnings. See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); see also Fletcher, 455 U.S. at 606, 102 S.Ct. 1309, 71 L.Ed.2d 490; Jenkins v. Anderson, 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). In Doyle, the Court found that despite the importance of cross-examination, the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), compelled this result. The Court reasoned that the Miranda warnings contain an implicit assurance that silence will not carry a penalty. Doyle, 426 U.S. at 617, 96 S.Ct. 2240, 49 L.Ed.2d 91. Thus, the Court found that allowing a state to use the defendant's silence resulting from Miranda warnings against the defendant would be fundamentally unfair and a denial of due process.[6]Doyle, 426 U.S. at 618, 96 S.Ct. 2240, 49 L.Ed.2d 91.
Although the United States Supreme Court has found the use of post-Miranda silence impermissible, the Court has concluded that due process does not prohibit the use of pre-Miranda silence for impeachment purposes. See Fletcher, 455 U.S. at 606, 102 S.Ct. 1309, 71 L.Ed.2d 490; Jenkins, 447 U.S. at 240, 100 S.Ct. 2124, 65 L.Ed.2d 86. Due process does not preclude its use, because pre-Miranda silence does not stem from the state's inducement of silence through Miranda warnings. See Fletcher, 455 U.S. at 605-06, 102 S.Ct. 1309, 71 L.Ed.2d 490; Jenkins, 447 U.S. at 239-40, 100 S.Ct. 2124, 65 L.Ed.2d 86. The Court has found the giving of Miranda warnings dispositive of this issue in both pre-arrest and post-arrest situations.
In Jenkins, the Court examined whether prearrest, pre-Miranda silence could be used to impeach a defendant. The defendant was not apprehended until he turned himself in two weeks after he stabbed and killed the victim. Jenkins, 447 U.S. at 232, 100 S.Ct. 2124, 65 L.Ed.2d 86. At trial, the defendant claimed the killing was in self-defense. On cross-examination of the defendant, the prosecutor asked whether the defendant had reported his account of events at any time prior to his surrender.[7] The prosecutor also referred to the defendant's pre-arrest silence in closing. Id. at 233, 100 S.Ct. 2124, 65 L.Ed.2d 86. The Court determined that use of defendant's pre-arrest, pre-Miranda silence to impeach did not violate the Fifth Amendment, where the defendant took the stand in his own defense. Jenkins, 447 U.S. at 235, 100 S.Ct. 2124, 65 L.Ed.2d 86; see also supra note 6. Additionally, the Court held that no Fourteenth Amendment violation occurred because, unlike Doyle, no governmental action induced the defendant to remain silent before arrest. Jenkins, 447 *766 U.S. at 239-40, 100 S.Ct. 2124, 65 L.Ed.2d 86. Accordingly, the Court held that the defendant's pre-arrest, pre-Miranda silence could be admitted to impeach, provided it was admissible under the applicable rules of evidence. See Jenkins, 447 U.S. at 239, 100 S.Ct. 2124, 65 L.Ed.2d 86.
Under federal evidentiary law, pre-Miranda silence must be inconsistent with defendant's exculpatory statement at trial before it can be admitted to impeach the defendant. Jenkins, 447 U.S. at 239, 100 S.Ct. 2124, 65 L.Ed.2d 86; see also United States v. Hale, 422 U.S. 171, 176-179, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). If no inconsistency exists, then the silence lacks probative value and is inadmissible. If the defendant's pre-Miranda silence and exculpatory statement are inconsistent, the silence may be admissible. See Hale, 422 U.S. at 176-179, 95 S.Ct. 2133, 45 L.Ed.2d 99.
The Court in Jenkins noted that in the past it had exercised its supervisory powers over federal courts to hold that prior silence could not be used to impeach, because the probative value of a defendant's silence was outweighed by its prejudicial effect. Specifically, the Court noted that in Hale it addressed a situation similar to the one in Doyle and concluded on evidentiary rather than constitutional grounds that reference to defendant's silence at the time of arrest amounted to prejudicial error. Jenkins, 447 U.S. at 239, 100 S.Ct. 2124, 65 L.Ed.2d 86.
Jenkins, unlike Hale, was controlled by state evidentiary law. Consequently, the Court in Jenkins did not make a final determination as to the admissibility of the defendant's prearrest, pre-Miranda silence. Instead, the Court reserved to the states the power to use evidentiary rules to define when the use of silence should be excluded as more prejudicial than probative. See Jenkins, 447 U.S. at 240, 100 S.Ct. 2124, 65 L.Ed.2d 86; see also Fletcher, 455 U.S. at 607, 102 S.Ct. 1309, 71 L.Ed.2d 490. Specifically, the Court in Jenkins stated:
Our decision today does not force any state court to allow impeachment through the use of prearrest silence. Each jurisdiction remains free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial. We merely conclude that the use of prearrest silence to impeach a defendant's credibility does not violate the Constitution.
447 U.S. at 240, 100 S.Ct. 2124, 65 L.Ed.2d 86.
In Fletcher v. Weir, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Court extended its analysis in Jenkins to a situation in which the prosecutor commented on a defendant's silence when arrested, but prior to the giving of Miranda warnings. There was nothing in the record in Fletcher indicating when Miranda warnings were actually given. Fletcher, 455 U.S at 605, 102 S.Ct. 1309, 71 L.Ed.2d 490. The Court concluded that the federal constitution does not prohibit the use of post-arrest, pre-Miranda silence for impeachment purposes. The Court again reiterated that the states are free to apply their own rules of evidence to determine whether such silence is admissible. Fletcher, 455 U.S. at 606, 102 S.Ct. 1309, 71 L.Ed.2d 490.
Accordingly, under the federal constitution, a state may offer impeachment evidence of a defendant's silence occurring either before or after arrest, so long as the silence did not follow Miranda warnings. See Fletcher, 455 U.S. at 606, 102 S.Ct. 1309, 71 L.Ed.2d 490; Jenkins, 447 U.S. at 240, 100 S.Ct. 2124, 65 L.Ed.2d 86. The states, however, are free to find, pursuant to their own rules of evidence, that pre-Miranda silence occurring either before or after arrest, or in both situations, is not admissible.
Some states have analyzed the use of pre-Miranda silence pursuant to their rules of evidence, as suggested by the United States Supreme Court.[8] Others have recognized *767 that the United States Supreme Court's decisions leave open the possibility that a state constitution may prohibit the use of pre-Miranda silence.[9] Because state courts have the power to interpret their state constitutions as more protective of individual rights than the federal constitution, states may rely on their own constitutions to prohibit the use of pre-Miranda silence. See Sapp v. State, 690 So.2d 581 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 116, 139 L.Ed.2d 69 (1997); Traylor v. State, 596 So.2d 957, 961 (Fla. 1992); State v. Davis, 38 Wash.App. 600, 686 P.2d 1143 (Wash.Ct.App.1984). Still other state courts have found that both their state constitutions and their evidentiary rules preclude the use of pre-Miranda silence.[10]
Florida courts have resolved the issue of pre-Miranda silence left open by the United States Supreme Court by examining both the Florida Constitution and the state's evidentiary rules. See Webb v. State, 347 So.2d 1054 (Fla. 4th DCA), cert. denied, 354 So.2d 986 (Fla.1977); Weiss v. State, 341 So.2d 528 (Fla. 3d DCA 1977). Accordingly, we consider both our constitution and our evidentiary rules to determine whether the State improperly used Hoggins' pre-Miranda silence for impeachment purposes. Before we do though, we emphasize that the instant case presents a situation similar to that in Fletcher in that we are dealing with postarrest, pre-Miranda silence. Contrary to the State's assertion, this is not a prearrest, pre-Miranda situation like the one in Jenkins, where comments were made about the defendant's silence during the two-week period between the murder and defendant's surrender. See also Reaser v. State, 356 So.2d 891 (Fla. 3d DCA 1978) (addressing a prearrest situation similar to Jenkins); Lebowitz v. State, 343 So.2d 666 (Fla. 3d DCA 1977) (finding no constitutional violation where prosecutor commented on defendant's silence at time of search rather than time of arrest).
Florida case law as well as case law from the United States Supreme Court and other states supports the conclusion that postarrest silence includes silence at the time of arrest. Although the time of arrest does not impact whether impeachment by prior silence is permitted under the federal constitution, the United States Supreme Court has implied that postarrest silence is not limited to silence which occurs after the arresting officer informs the defendant that he or she is under arrest. Rather, the Court's decisions have implied that postarrest silence also includes silence which occurs at the time of arrest. See Jenkins, 447 U.S. at 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (finding no due process violation because the failure to speak occurred before the defendant was taken into custody *768 and given Miranda warnings); Doyle, 426 U.S. at 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (holding that the use for impeachment purposes of a defendant's silence at the time of arrest and after receiving Miranda warnings violates the Due Process Clause of the Fourteenth Amendment). Likewise, other states have classified silence that occurred at the time of arrest as post-arrest silence. See, e.g., People v. Jacobs, 158 Cal.App.3d 740, 204 Cal.Rptr. 849 (Cal.Ct.App.1984) (recognizing post-arrest silence includes silence occurring during or after arrest); Davis, 686 P.2d at 1144 (referring to comments on defendant's silence at time of detention and arrest as comments on post-arrest silence). Florida courts similarly recognize that post-arrest silence includes silence at the time of arrest. In Ruiz v. State, 378 So.2d 101 (Fla. 3d DCA 1979), the court viewed as post-arrest silence custodial and post-apprehension silence maintained in the presence of an arresting or investigating officer. Thus, we dismiss the State's attempt to characterize this case as a pre-arrest situation and we focus our analysis on the use of pre-Miranda silence that occurs at the time of arrest.
First, we examine whether Florida's Constitution imposes more rigorous constraints on the use of Hoggins' post-arrest, pre-Miranda silence than does the United States Constitution. Florida courts have consistently maintained that Florida's constitution protects post-arrest, pre-Miranda silence in addition to post-Miranda silence. The courts have found prior to Doyle, after Doyle but prior to Jenkins and Fletcher, and even after Jenkins and Fletcher that the use of a defendant's post-arrest, pre-Miranda silence violates the defendant's right to remain silent.
Prior to the United States Supreme Court's decision in Doyle, Florida courts found that the Fifth Amendment as interpreted by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), precluded the use of a defendant's silence at the time of arrest. The first case to address the issue was Jones v. State, 200 So.2d 574 (Fla. 3d DCA 1967). The facts in Jones were similar to the facts in the instant case. After a pursuit, the defendant was apprehended by police and identified by the victim. Following the identification, the officers arrested the defendant. At trial, the state asked one of the arresting officers whether the defendant said anything when the victim accused him of taking her purse. The officer responded negatively. Id. at 575. The court concluded that the officer's testimony was improper based on the following language in Miranda:
In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.
Jones, 200 So.2d at 576 (quoting Miranda, 384 U.S. at 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694). No mention was made in Jones about when the defendant received Miranda warnings.
Subsequently, in Bennett v. State, 316 So.2d 41 (Fla.1975), this Court applied the analysis in Jones to a post-Miranda situation. The court, for the same reasons discussed in Jones, found improper an investigator's testimony that the defendant refused to sign a waiver of his Miranda rights. Bennett, 316 So.2d at 42-43. Although this was clearly a post-Miranda case, the Court did not indicate that the timing of Miranda warnings was dispositive.
Following the decision in Doyle, but prior to the decisions in Jenkins and Fletcher, Florida courts continued to rely on the right to remain silent as a basis for prohibiting the use of post-arrest, pre-Miranda silence. See Clark v. State, 363 So.2d 331 (Fla.1978) (recognizing that use of post-arrest silence is improper because it violates the defendant's right against self-incrimination); Weiss v. State, 341 So.2d 528 (Fla. 3d DCA 1977) (finding comments on the defendant's pre-trial silence violative of the defendant's fifth amendment right against self incrimination). The courts relied on the right to remain silent to prohibit the use of prior silence although the Doyle decision was based on principles of due process. Moreover, the courts found the use of post-arrest silence *769 improper even when the record was silent as to when the defendant received Miranda warnings. In Webb v. State, 347 So.2d 1054 (Fla. 4th DCA 1977), cert. denied, 354 So.2d 986 (Fla.1977), the State argued that where the record did not reflect when the defendant received Miranda warnings, it was free to cross-examine the defendant about whether he told arresting officers the alibi he testified to at trial. The court noted that the prosecutor's inquiry dealt with the defendant's silence after arrest when he had a constitutional right to remain silent. Webb, 347 So.2d at 1055. The court concluded that the receipt of Miranda warnings did not add to or detract from that right and, consequently, cross-examination on the exercise of that right was improper. See Webb, 347 So.2d at 1056.
The decisions in Jenkins and Fletcher did not alter Florida courts' conclusion that the right to remain silent precluded the use of postarrest silence. The courts continued to maintain that it was impermissible to comment on a defendant's postarrest silence whether on not the silence was induced by Miranda warnings. See Smith v. State, 681 So.2d 894, 895 (Fla. 4th DCA 1996); Fundora v. State, 634 So.2d 255, 256 (Fla. 3d DCA 1994); Thompson v. State, 634 So.2d 169, 170 (Fla. 1st DCA 1994); Hicks v. State, 590 So.2d 498, 500 (Fla. 3d DCA 1991); Lee v. State, 422 So.2d 928 (Fla. 3d DCA 1982), review denied, 431 So.2d 989 (Fla.1983). Unlike prior decisions though, the cases that followed Jenkins and Fletcher clearly were based on state constitutional law rather than federal constitutional law. See State v. Burwick, 442 So.2d 944, 947 (Fla.1983), cert. denied, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984); Hicks, 590 So.2d at 500; Lee, 422 So.2d at 930. In Lee, the court rejected the State's argument that federal constitutional law was dispositive of whether the prosecutor's comments on the defendant's postarrest, pre-Miranda silence were prohibited. The court found that the state constitution provided greater protection to the right to remain silent and precluded the use of defendant's postarrest silence. Lee, 422 So.2d at 930.
In addition to making clear that state constitutional law prohibited the use of postarrest silence, the courts made clear that this prohibition extended to all evidence and argument, including impeachment evidence and argument, that was fairly susceptible of being interpreted by the jury as a comment on silence. See State v. Smith, 573 So.2d 306, 317 (Fla.1990) (quoting Hosper v. State, 513 So.2d 234, 235 (Fla. 3d DCA 1987), which found impeachment with a defendant's pretrial silence amounted to an impermissible comment on the defendant's right to remain silent). Thus, the courts recognized that by taking the stand a defendant did not waive his or her right to silence at the time of arrest. See Sharp v. State, 605 So.2d 146 (Fla. 1st DCA 1992) (relying on Smith and rejecting State's argument that defendant waived his right to remain silent at time of arrest by testifying at trial). Rather, comments on silence at the time of arrest are subject to the "fairly susceptible" test even if introduced as impeachment. See State v. Smith, 573 So.2d at 317; see also State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986); State v. Kinchen, 490 So.2d 21 (Fla.1985).
Thus, past case law demonstrates that a foundation for protecting the defendant's postarrest silence existed in Florida prior to and following the decisions of the United States Supreme Court in Doyle, Jenkins, and Fletcher. Florida courts reach a different conclusion than does the United States Supreme Court on the issue of postarrest, pre-Miranda silence for two reasons. First, unlike the United States Supreme Court, Florida courts have recognized that the defendant does not waive his or her right to silence at the time of arrest by taking the stand in his or her own defense. Regardless of whether evidence of postarrest silence is introduced in the state's case-in-chief or for impeachment purposes, the same test applies. If the comment is fairly susceptible of being construed by the jury as a comment on the defendant's exercise of his or her right to remain silent, it violates the defendant's right to silence. The comments at issue in the instant case were fairly susceptible of being interpreted as comments on Hoggins' silence and therefore clearly violated his right to remain silent.
*770 The second reason Florida courts reach a conclusion different from the United States Supreme Court on this issue is related to the first reason. The United States Supreme Court's decision finding post-Miranda silence violative of the federal constitution is based primarily on due process principles. While the absence of Miranda warnings may prevent a federal due process violation from occurring where the defendant's post-arrest silence is used for impeachment purposes, the same is not true of the defendant's right to remain silent. The absence of such warnings does not add to or detract from an individual's right to remain silent. Webb, 347 So.2d at 1056. As the court in Webb noted:
If one has a right upon arrest not to speak for fear of self-incrimination, then the mere fact the police call his attention to that right does not elevate it to any higher level. If it were otherwise, an ignorant defendant who was advised of his right to remain silent would be protected against use of his silence to impeach him at trial; but an educated, sophisticated defendant familiar with his right to remain silent who was not apprised of that right by the police would be subject to impeachment for the exercise of a known constitutionally protected right.
Id. Thus, by relying on the right to remain silent to preclude evidence of and comment upon postarrest silence we avoid treating differently defendants who are aware of their Miranda rights and those who are not. Moreover, we do not provide police officers with an incentive to delay the giving of Miranda warnings.
Our holding recognizing that the use of a defendant's silence at the time of arrest violates article I, section 9 of Florida's Constitution regardless of whether Miranda warnings have been given does not extend to prearrest silence. Florida courts have found, consistent with the United States Supreme Court in Jenkins, that prearrest, pre-Miranda silence can be used to impeach a defendant. See Parker v. State, 641 So.2d 483 (Fla. 5th DCA 1994); Rodriguez v. State, 619 So.2d 1031 (Fla. 3d DCA 1993), review denied, 629 So.2d 135 (Fla.1993); Williams v. State, 400 So.2d 471 (Fla. 5th DCA 1981), affirmed, 406 So.2d 1115 (Fla.1981); Lebowitz v. State, 343 So.2d 666 (Fla. 3d DCA 1977), cert. denied, 366 So.2d 882 (Fla.1978).[11] Accordingly, we find the decision in Rodriguez, with which the district court recognized a potential conflict, is distinguishable from the instant case. As pointed out by the district court in its opinion below, it appears that Rodriguez's silence occurred prior to rather than at the time of arrest. We acknowledge though that certain portions of Rodriguez could be interpreted as permitting impeachment with any pre-Miranda silence.[12] We therefore disapprove Rodriguez to the extent it implies that post-arrest silence, including silence that occurs at the time of arrest, may be used to impeach the defendant.
Even if Florida's constitution did not preclude the use of Hoggins' post-arrest, pre-Miranda silence for impeachment purposes, Florida's rules of evidence would preclude its use because Hoggins' silence was not inconsistent with his trial testimony. See Webb, 347 So.2d at 1056 (finding inadmissible silence that is not inconsistent with a defendant's exculpatory statement at trial); see also Hale, 422 U.S. at 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (where government fails to establish threshold inconsistency between silence and exculpatory statement at trial, silence lacks any probative value and must be excluded). In Florida, a defendant takes the stand in a criminal case subject to impeachment by prior inconsistent statements to the *771 extent that the probative value of the prior inconsistent statements is not outweighed by the risk of unfair prejudice to the defendant. See §§ 90.403, 608, Fla. Stat. (1997). The same rule applies to impeachment by prior silence, which is not precluded by the federal or state constitution. See Parker, 641 So.2d at 485; Rodriguez, 619 So.2d at 1032-33. Thus, inconsistency is a threshold question when dealing with silence that may be used to impeach. If a defendant's silence is not inconsistent with his or her exculpatory statement at trial then the statement lacks probative value and is inadmissible.
Inconsistency between post-arrest silence and an exculpatory statement made by a defendant at trial is difficult to establish. Silence is generally deemed ambiguous. See Hale, 422 U.S. at 176, 95 S.Ct. 2133, 45 L.Ed.2d 99. The ambiguity is considered to lessen, and consequently the potential for inconsistency increases, when silence persists in the face of accusation. Id. However, silence is "considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question." Id. This Court, like the United States Supreme Court, has recognized that inconsistency exists only if the prior silence occurred at a time when it would have been natural for the defendant to deny the accusations made against him. In State v. Smith, 573 So.2d 306, 313 (Fla.1990), the Court stated:
To be inconsistent, a prior statement must either directly contradict or materially differ from the expected testimony at trial. That includes allowing "witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." Jenkins v. Anderson, 447 U.S. 231, 239 [100 S.Ct. 2124, 65 L.Ed.2d 86] (1980). However, omissions must be of a material, significant fact rather than mere details.
The time of arrest is not an occasion when circumstances naturally call upon a defendant to speak out. On the contrary, there are many reasons that a defendant may choose to remain silent. As the United States Supreme Court noted in Hale:
At the time of arrest ... innocent and guilty alikeperhaps particularly the innocentmay find the situation so intimidating that they may choose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply. He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention.
422 U.S. at 177, 95 S.Ct. 2133, 45 L.Ed.2d 99 (citation omitted). Moreover, other courts have recounted the numerous reasons that a defendant may remain silent at the time of arrest. In People v. DeGeorge, 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11 (N.Y. 1989), the court listed the following reasons why a defendant might remain silent at the time of arrest:
[A] person's "awareness that he is under no obligation to speak or to the natural caution that arises from his knowledge that anything he says might later be used against him at trial," a belief that efforts at exoneration would be futile under the circumstances, or because of explicit instructions not to speak from an attorney. Moreover, there are individuals who mistrust law enforcement officials and refuse to speak to them not because they are guilty of some crime, but rather because "they are simply fearful of coming into contact with those whom they regard as antagonists."
Id. 543 N.Y.S.2d 11, 541 N.E.2d at 13 (citation omitted).
In the instant case, Hoggins was handcuffed and confronted by a victim who was threatening to kill him. The police had to restrain the victim and immediately remove Hoggins from the room in which he was arrested to avoid further incident. In light of the circumstances, Hoggins' silence might be explained by any number of reasons. Accordingly, we are unable to say with any degree of certainty that Hoggins' failure to offer an explanation at the time of arrest was *772 inconsistent with his exculpatory statement at trial.
Not only did Hoggins' silence at the time of arrest lack probative value, it also had a significant potential for prejudice. Again, the United States Supreme Court has indicated with regard to post-arrest silence:
The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest.
Hale, 422 U.S. at 180, 95 S.Ct. 2133, 45 L.Ed.2d 99; see also Wills v. State, 82 Md. App. 669, 573 A.2d 80, 85 (Md.Ct. Spec.App.1990); DeGeorge, 543 N.Y.S.2d 11, 541 N.E.2d at 13. Thus, we conclude that comments on Hoggins' pre-trial, pre-Miranda silence were prohibited by article I, section 9 of the Florida Constitution, and by Florida's evidentiary rules.
Error occurred in this case not only when the prosecutor commented on Hoggins' pre-Miranda silence at the time of arrest, but also when the prosecutor made clearly prohibited comments on Hoggins' post-Miranda silence in rebuttal closing argument. The prosecutor first emphasized that Hoggins had never, prior to trial, offered the exculpatory explanation he gave at trial. The prosecutor then reiterated that Hoggins did not offer his exculpatory account of events after being advised of his Miranda rights. Even under the minimum federal standards of protection, these comments on post-Miranda silence are impermissible. See Doyle, 426 U.S. at 619, 96 S.Ct. 2240, 49 L.Ed.2d 91. Florida also specifically prohibits these comments on post-Miranda silence. See Spivey v. State, 529 So.2d 1088, 1091 (Fla.1988); State v. Burwick, 442 So.2d 944, 948 (Fla.1983). Accordingly, we agree with the district court that the trial court erred by allowing impeachment with argument and comments on Hoggins' post-Miranda silence.
Error involving comment on silence must be evaluated under a harmless error analysis. See State v. DiGuilio, 491 So.2d 1129, 1130 (Fla.1986). Although defense counsel did not make a contemporaneous objection to the prosecution's comment on Hoggins' post-Miranda silence, Whitton v. State, 649 So.2d 861, 865 (Fla.1994), requires us to examine the entire record, regardless of offered objections, when performing a harmless error analysis. Accordingly, in conducting a harmless error analysis we consider the prosecutor's comments and argument on Hoggins' post-Miranda silence as well as comment and argument on Hoggins' pre-Miranda silence at the time of arrest.
When the evidence against the defendant is not clearly conclusive, comment on postarrest silence is not harmless. See DiGuilio, 491 So.2d at 1138. The test is not one of weight of the evidence or the overwhelming nature of the evidence offered to show guilt. Rather, the test is whether a reasonable possibility exists that the error affected the verdict. See, e.g., Whitton, 649 So.2d at 865.
Here, respondent's exculpatory explanation at least cast doubt on the State's case. Although one of the victims identified respondent, discrepancies existed between the victim's memory of the type of tattoo on the assailant's arm and the actual tattoo on respondent's shoulder. A defense witness corroborated part of respondent's story, and the officer responsible for filing the police report conceded errors in the description of the location where evidence was actually found in the apartment. In light of these contradictions, we cannot reasonably say that the comments on Hoggins' silence did not affect the jury verdict.
Accordingly, we answer the certified question in the affirmative and approve the district court's decision based on the reasoning herein. We disapprove Rodriguez to the extent that it implies that impeachment with all pre-Miranda silence is permissible.
It is so ordered.
HARDING, C.J., and SHAW and ANSTEAD, JJ., concur.
*773 WELLS, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
WELLS, Justice, concurring in part and dissenting in part.
I dissent from the majority's answer to the certified question. I do not agree that our constitution protects absolutely a defendant's pre-Miranda silence. Rather, the admissibility of such silence is governed by the trial court under our rules of evidence.
In Fletcher v. Weir, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Supreme Court held that:
In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.
Id. at 607, 102 S.Ct. 1309, 71 L.Ed.2d 490. This Court has traditionally construed the rights of defendants under the federal decision in Miranda consistent with the construction given to the United States Constitution by the federal courts. See State v. Owen, 696 So.2d 715 (Fla.1997) (applying federal law to issue of whether equivocal assertion of right to counsel requires police to cease interrogation); Sapp v. State, 690 So.2d 581, 585 (Fla.1997) (state constitution did not afford defendant greater protection than federal constitution regarding anticipatory invocation of Miranda rights). I find no reason to deviate from this established practice here. I also note that although our analysis in Traylor v. State, 596 So.2d 957 (Fla.1992), was grounded in the Florida Constitution, our conclusions were no different from those of the United States Supreme Court. See Owen, 696 So.2d at 719. Because Florida's Constitution does not prohibit the use of a defendant's pre-Miranda silence, the admissibility of such silence at trial is limited only by the Florida Rules of Evidence.
For these reasons, I would approve the district court's decision on the basis of improper impeachment. I would also approve the Third District's decision in Rodriguez v. State, 619 So.2d 1031 (Fla. 3d DCA 1993).
OVERTON, J., concurs.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] On the night of the robbery, Hoggins reported to the police that his bike had been stolen.
[3] Hoggins did not make an objection to this rebuttal closing argument.
[4] Article I, section 9 provides:

No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against himself.
[5] Additionally, the State argues that Hoggins failed to specifically object on the grounds of a violation of article I, section 9, of the Florida Constitution. Rather, Hoggins phrased his objection in terms of the right to silence guaranteed by the Fifth Amendment of the United States Constitution. However, we find that Hoggins' objection and the subsequent discussion of Rodriguez sufficiently alerted the trial court to the possibility of a violation of the defendant's rights guaranteed by the Florida Constitution. Cf. Spivey v. State, 529 So.2d 1088, 1093 (Fla.1988); Williams v. State, 414 So.2d 509, 511 (Fla.1982); Castor v. State, 365 So.2d 701, 703 (Fla.1978).
[6] Although the United States Supreme Court in Doyle found the use of post-Miranda silence violated the Fourteenth Amendment, the majority opinion did not specifically address the possibility of a Fifth Amendment violation. Justice Stevens, however, addressed the issue in his dissenting opinion, and his view was subsequently adopted in Jenkins v. Anderson, 447 U.S. 231, 235, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). In Jenkins, the majority held that the use of pre-arrest, pre-Miranda silence did not violate the Fifth Amendment because the defendant in that case voluntarily took the stand in his own defense. In reaching this conclusion, the Court relied on Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926). In Raffel, the Court recognized that while the prosecution may not use a defendant's prior silence in its case-in-chief, the use of prior silence to impeach a defendant who testifies in his own defense does not violate the Fifth Amendment. No violation occurs because the defendant waives the Fifth Amendment right to remain silent during trial when he or she testifies. Upon taking the stand, the defendant becomes subject to cross-examination impeaching his credibility just like any other witness. Id. at 496-97, 46 S.Ct. 566, 70 L.Ed. 1054. This is true regardless of whether the prior silence amounted to an invocation of the defendant's right to remain silent. See Jenkins, 447 U.S. at 236 n. 2, 100 S.Ct. 2124, 65 L.Ed.2d 86.
[7] The silence at issue in Jenkins did not occur simultaneously with arrest as is the case here.
[8] These cases fall into two categories. The first line of cases have applied a state evidentiary rule similar to the federal evidentiary rule, which permits the use of pre-Miranda silence only if its probative value outweighs its prejudicial effect. Compare Silvernail v. State, 777 P.2d 1169 (Alaska Ct.App.1989) (finding defendant's silence immediately before arrest inadmissible where silence was at least as consistent with innocence as with guilt); and People v. DeGeorge, 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11 (N.Y.1989) (same); with State v. Antwine, 743 S.W.2d 51 (Mo.1987) (finding admissible defendant's immediate postarrest silence where natural expectancy of an exculpatory statement existed and defendant's silence was probative of inconsistencies in that testimony).

In the second line of cases, courts have found that their states' rules of evidence prohibit the use of pre-Miranda silence because its prejudicial effect always outweighs its probative value. See State v. Leecan, 198 Conn. 517, 504 A.2d 480 (Conn.1986) (finding post-arrest silence inadmissible under evidence rules); Mallory v. State, 261 Ga. 625, 409 S.E.2d 839 (Ga.1991) (finding inadmissible defendant's failure to come forward and explain his innocence when he knew he was under investigation); Wills v. State, 82 Md.App. 669, 573 A.2d 80 (Md.Ct.Spec.App.1990) (holding evidence of an accused's post-arrest silence inadmissible for impeachment purposes). The Mallory and Wills courts did not address the issue of pre-Miranda silence under their state constitutions and, thus, left open the possibility that their state constitutions might also prohibit use of pre-Miranda silence.
[9] See Nelson v. State, 691 P.2d 1056 (Alaska Ct.App.1984) (finding that pursuant to the state's constitution a person under arrest cannot normally be impeached by the fact he was silent after arrest); State v. Davis, 38 Wash.App. 600, 686 P.2d 1143 (Wash.Ct.App.1984) (holding that use of defendant's post-arrest silence violates the state's due process clause, regardless of whether the silence follows Miranda warnings); Tortolito v. State. 901 P.2d 387 (Wyo.1995) (finding that state constitution prohibited use of defendant's silence in the face of accusation by police, but before police placed handcuffs on the defendant).
[10] See Coleman v. State, 111 Nev. 657, 895 P.2d 653 (Nev.1995) (noting that postarrest silence lacks probative value and finding use of postarrest silence precluded by right to remain silent regardless of whether Miranda warnings given); Commonwealth v. Turner, 499 Pa. 579, 454 A.2d 537 (Pa.1982) (finding use of post-arrest silence prohibited by state constitution and evidentiary rules); Sanchez v. State, 707 S.W.2d 575 (Tex. Crim.App.1986) (same).
[11] This is true, however, only if the silence was inconsistent with the defendant's testimony at trial. See Reaser v. State, 356 So.2d 891, 892 (Fla. 3d DCA), cert. denied, 366 So.2d 884 (Fla. 1978).
[12] The following passage from Rodriguez might be construed as applying to both pre-arrest and post-arrest silence:

In addition, a defendant's right to remain silent is not violated when a defendant testifies in his own defense and is impeached with his prior silence. Jenkins, 447 U.S. at 238 [100 S.Ct. 2124, 65 L.Ed.2d 86]. Under these circumstances, "impeachment follows the defendant's own decision to cast aside the cloak of silence and advances the truth-finding function of the criminal trial." Id.
619 So.2d at 1032.