994 So.2d 1165 (2008)
Joshua CHAMBLIN, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-6731.
District Court of Appeal of Florida, First District.
October 7, 2008.
*1166 David W. Collins of the Law Office of David Collins, Monticello; David J. Finger of the Law Offices of David Finger, Miami, for Appellant.
Bill McCollum, Attorney General, and Terry P. Roberts, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We reverse the defendant's convictions for DUI manslaughter, reckless driving and possession of alcohol by a person under 21 years of age. During trial, the prosecutor improperly commented on the defendant's Fifth Amendment right to remain silent, in violation of both Florida and federal law. The trial court erred by denying the defendant's motion for mistrial on this basis, and we therefore reverse and remand for a new trial.
The charges arose after the defendant, Joshua Chamblin, was in a single-vehicle crash that resulted in the death of one of his passengers. On August 12, 2005, Chamblin drove his jeep to Georgia to have the suspension elevated and oversized tires installed. After the work on the jeep was complete, Chamblin drove around visiting friends for approximately eight hours. He was drinking beer throughout this period of time. After dark, he met up with two friends, Tyson Spindell and Kristopher Sammons. Spindell and Sammons had been drinking for some time, as well, when they joined Chamblin in his jeep.
At approximately 2:45 a.m., Chamblin decided to amuse himself and his friends by driving the jeep into an open field and driving quickly in repeated, tight circles. This maneuver causes the vehicle to spin, in a move commonly known as "spinning a donut." Sammons was seated in the front passenger seat and Spindell was in the back seat. As Chamblin attempted one of the circles, the jeep flipped over. A bar on the jeep crushed Sammons' throat and suffocated him, killing him almost instantly. Chamblin suffered a broken leg and was trapped under the vehicle. Spindell suffered relatively minor injuries and was able to extricate himself.
An ambulance arrived on the scene, and emergency medical technicians began rendering assistance to the men. One of the EMTs, Thomas Gniewick, attempted to check Chamblin's level of responsiveness during the ambulance ride, by asking him how the accident had occurred. Chamblin *1167 told him that he had been "doing donuts and the jeep flipped," and he admitted to having drunk six beers. Gniewick understood Chamblin's comments as meaning that Chamblin took responsibility for having caused the accident.
Following the accident, Chamblin's blood was drawn, and a blood-alcohol test conducted. The test revealed that, at the time of the accident, his blood-alcohol level was 0.19%, which is more than twice the legal limit. Chamblin was arrested in early November of 2005, some two and a half months after the accident. In August of 2006, Chamblin went to trial on charges of DUI manslaughter, reckless driving and possession of alcohol by a person under 21 years of age. That trial ended in a hung jury, and a second trial began on November 13, 2006.
During trial, Spindell, the back seat passenger, testified for the State. He testified that, immediately after the accident, he had told Chamblin that Sammons was dead, and Chamblin had replied by saying that his life was over and that he had killed Sammons.
Another paramedic on the scene, Lucas Williams, testified during trial. Williams stated that he considered both Chamblin and Sammons to be his friends. Corroborating the testimony of Gniewick, Williams testified that Chamblin smelled of alcohol at the scene of the accident, and that he had admitted having drunk six beers prior to the accident.
The State presented two expert witnesses, who testified about the physical evidence and the cause of the accident. Gary Steven Dawson, the traffic homicide investigator at the time of the accident, testified for the State, as did Van Calhoun, an accident reconstructionist. Dawson testified that the tire marks from the jeep indicated that the accident occurred when the jeep "started to make a sharp right turn in order to spin a donut."
Chamblin took the stand in his own defense. He admitted that he had been drinking and that he was impaired on the day of the accident. However, he testified that he had not caused the wreck. Instead, he claimed that, as he was accelerating, Sammons bumped into him, his body came across Chamblin's, and Sammons reached over, grabbed the steering wheel and jerked it downward, causing the jeep to flip. He also testified that he did not recall having said that he had killed his best friend or having told paramedics that he had executed the sharp turn that had caused the wreck.
On cross-examination, the prosecutor referred back to the first trial, which had resulted in a hung jury. The prosecutor asked Chamblin, "Last August, in your testimony here in Madison County, you admitted, did you not, that was the first time you publicly said that [Sammons] grabbed the steering wheel. Isn't that correct?" Chamblin replied, "Yes, sir."
At that point, defense counsel moved for a mistrial, arguing that the question was an impermissible comment on the defendant's Fifth Amendment right to remain silent. The trial court overruled the objection, ruling that the "way the question was asked, the Court finds, is not specifically drawing on the inference on the defendant's right to remain silent. [sic]" The prosecutor then went on to elicit testimony from Chamblin that he did not recall admitting at the scene that he had been in control of the jeep and that he did not dispute that he had not told witnesses at the scene that Sammons had caused the accident.
Chamblin's expert, Dr. Jack Sparks, testified as an expert in biokinematics and accident reconstruction. He testified that, in his opinion, Chamblin had not contributed to Sammons' death, because the evidence showed that he had been making *1168 slow turns, and Sammons had jerked the vehicle to the right, causing it to spin and flip over. The State's accident reconstructionist, Van Calhoun, testified in rebuttal, disagreeing with Dr. Sparks's testimony in toto.
During closing arguments, the prosecutor remarked on Gniewick's conversation in the ambulance with Chamblin, arguing that this conversation "was his opportunity to shift the blame to his dead friend, but he waited a year to do that." Defense counsel objected and moved for a mistrial on the ground that the prosecutor's statement was an impermissible comment on Chamblin's silence. The trial court denied the motion, and the prosecutor went on to argue that Chamblin's story about Sammons grabbing the wheel was not credible, in light of his inculpatory statements to Gniewick and his failure to give this new version of events previously.
The jury returned a verdict of guilty on all charges. Chamblin subsequently filed an amended motion for new trial, based in part on the prosecutor's comments on his silence. Following a hearing, the trial court denied the motion. It adjudicated Chamblin guilty and sentenced him to 124 months in prison.
The Florida Constitution prohibits prosecutorial comment on a defendant's silence at the time of his arrest, prior to the administration of his Miranda warnings, as well as attempts to impeach the defendant therewith. See Art. I, § 9, Fla. Const.; State v. Hoggins, 718 So.2d 761, 768-70 (Fla.1998); Robbins v. State, 891 So.2d 1102 (Fla. 5th DCA 2005). Here, the prosecutor's comments at trial violated the state constitution[1] in this respect, because they were fairly susceptible of being construed by the jury as a comment on the defendant's exercise of his right to remain silent. See Hoggins, 718 So.2d at 769.
In addition to the Florida proscription against comments on pre-Miranda silence, both the Florida and federal law prohibit prosecutorial comments on a defendant's post-Miranda silence. See Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); Hoggins at 772; Spivey v. State, 529 So.2d 1088, 1091 (Fla.1988); State v. Burwick, 442 So.2d 944, 948 (Fla.1983). A trial court therefore errs by allowing impeachment by argument and comments on a defendant's post-Miranda silence. Where the prosecutor emphasizes to the jury that the defendant did not, at any time prior to trial, offer the exculpatory explanation he gave at trial, such remarks are impermissible as comments on post-Miranda silence. See, e.g., Hoggins at 772.
The State incorrectly characterizes the silence at issue as pre-arrest and pre-Miranda. It has attempted in its brief to focus on the prosecutor's references to the specific statements the defendant made to witnesses at the scene of the accident, months before his arrest. But the prosecutor also asked at least one question and made at least one comment in closing argument that went to the defendant's post-Miranda silence.
On cross-examination, the prosecutor secured the defendant's admission that his trial testimony during the first trial[2] was the first time he had ever publicly mentioned that Sammons jerked the steering wheel downward. This line of inquiry necessarily covered the period between the *1169 accident and the first trial, which, of course, included an extended period after the defendant received his Miranda warnings. In closing arguments, the prosecutor told the jury that the defendant's conversation in the ambulance with paramedic Tom Gniewick "was [the defendant's] opportunity to shift the blame to his dead friend," but that "he waited a year to do that." Thus, the prosecutor focused the jury's attention on the entire first year after the accident, which, again, included an extended post-Miranda period. The trial court should have declared a mistrial based on these statements, as they clearly constituted improper prosecutorial comment on the defendant's post-Miranda silence and thus on his right to remain silent under both the U.S. and Florida Constitutions.
We have considered the other arguments and issues raised by the defendant and we reject them as lacking in merit. However, we reverse for the stated reasons and remand for a new trial.
Reversed and remanded.
BARFIELD, VAN NORTWICK, and PADOVANO, JJ., concur.
NOTES
[1] Unlike the Florida Constitution, the U.S. Constitution does not prohibit prosecutorial comment on a defendant's post-arrest, pre-Miranda silence. See Fletcher v. Weir, 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982).
[2] At the first trial, the defendant testified on his own behalf, stating for the first time that Sammons had grabbed the wheel and jerked it downward, causing the jeep to flip.