DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DONNA HORWITZ,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-336

[ February 18, 2015 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Joseph G. Marx, Judge; L.T. Case No. 502011CF010843AXX.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, and W. Grey Tesh, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Appellant, Donna Horwitz, appeals her conviction for first degree murder with a firearm. We reverse and hold that the trial court erred in admitting evidence of appellant's pre-arrest, pre-*Miranda* silence where appellant did not testify at trial.[1] We also certify a question to the Florida Supreme Court as one of great public importance.

Appellant was charged with first degree murder in connection with the shooting death of her former husband, Lanny Horwitz. On the morning of September 30, 2011, Lanny was shot multiple times in the master bathroom of his home and was pronounced dead at the scene.

Appellant and Lanny had been divorced twice, but they were living together again at the time of the murder. The couple's 38-year-old son,

---

[1] We find no reversible error or abuse of discretion as to any of the other issues raised in appellant's initial brief and supplemental brief.

Radley, also lived in Lanny's home.

Radley was the state's key witness against appellant. There was evidence that Radley had a troubled relationship with Lanny and that he was a beneficiary on Lanny's life insurance policy, but that evidence need not be addressed in detail for purposes of this opinion.

Radley testified that in the months before the murder, appellant complained several times that Lanny was being mean and nasty to her. Appellant also made comments about the amount of time Lanny spent with a female business associate.

The night before the murder, Lanny went to dinner with Radley and told him that he was planning to travel to North Carolina with the female business associate. Later that night, appellant mentioned to Radley that she had seen Lanny's luggage in the laundry room and realized that he was leaving town. When Radley went to bed that night, his parents were still awake.

Radley testified that he was awakened the next morning by the sound of gunshots. When he heard the clicking sound of an empty gun, he left his room to see what was happening. He saw appellant running in and out of his parents' bedroom, screaming his name. The house alarm was triggered by the home's glass break sensors. Radley looked in the bathroom and saw his father on the floor. Radley went back to appellant, who then said, "He was so horrible."

Meanwhile, the security guard at the community gate received an alarm from the Horwitz residence at about 7:00 a.m. He dispatched a security officer, Luis Garcia, to the home. Garcia arrived at the home within about three minutes of receiving the call about the alarm. Radley answered the door, appearing as though he had just gotten out of bed. Garcia asked Radley if everything was okay, and Radley responded, "I don't know, my mom is screaming." Garcia entered the house and saw appellant, who was very upset and was screaming, "I think he's dead."

Appellant pointed to the master bathroom area. Garcia looked in the bathroom and saw Lanny unresponsive on the ground, but still breathing. There was a gun in Lanny's hand, pointed at an angle that led Garcia to believe the wound may have been self-inflicted. Garcia moved the gun away from Lanny's body when he unsuccessfully tried to resuscitate him. Appellant told Garcia, "He said he would do this." However, Radley told Garcia that Lanny and appellant had been fighting. Garcia escorted appellant and Radley out of the house. Lanny was declared dead shortly

thereafter.

Appellant and Radley waited in Radley's SUV. Radley testified that he noticed several drops of blood on appellant's foot. Radley gave appellant some napkins and she wiped the blood drops off. Radley did not initially mention this to police.

Officer Coleman arrived at the scene in response to a call about a suicide. Coleman made contact with appellant and Radley, who were sitting in the SUV. At the scene, appellant appeared to be in shock. Coleman asked appellant if she needed anything, but appellant did not answer. Coleman then asked appellant if she wanted a bottle of water. In response, appellant put her fingers in her ears and said she couldn't hear Coleman. Coleman also asked appellant if she was in the room when the gun went off, but appellant did not answer. A hearing specialist testified for the defense that appellant had lost 48% of her ability to hear in each ear.

There was no evidence of forced entry into the home. Authorities found a gun on the floor outside the master bathroom, and another gun in a holster on the bedroom dresser. Bullet fragments fired from both guns were found in the bathroom. Radley tested negative for gun residue.

The gun on the floor near the bathroom had a mixture of Lanny's DNA and one other DNA source. Radley and the security guards were excluded as the second DNA source, but appellant could not be excluded. About one in fifteen Caucasian individuals (and an even smaller proportion of individuals from other races) would exhibit the same results as appellant. The gun on the dresser also contained DNA from two people, but the test results were inconclusive as to their identities.

A bloody finger smudge was found on the gate to the home. The blood on the gate contained a mixture of two DNA profiles, one from Lanny and the other from an unidentified source. Appellant, Radley, and the security officers were all excluded as the second DNA source on the gate.

A suitcase was found with appellant's name on the tag. The suitcase contained ammunition matching the type of ammunition fired from the guns.

The police also located appellant's journal, which contained several references to Lanny's relationship with his female business associate. The last entry of the journal was dated September 5th, 2011. It mentioned that Lanny went to see the female associate, and stated in relevant part:

3

"Another long day of lies, of being Mr. Meany.  I stayed home all day.  Very tired."

During trial, the court permitted the state, over appellant's objections, to introduce evidence of appellant's pre-arrest, pre-*Miranda* silence during its case-in-chief.  In addition to Coleman's testimony regarding appellant's silence in response to her questions, the state also elicited testimony that appellant never told Garcia or the police officers that there was anyone else in the house besides appellant, Lanny, and Radley at the time of the shooting.

Appellant did not testify at trial.  During closing, the prosecutor commented on appellant's pre-arrest silence, arguing to the jury that it could take appellant's silence in her interactions with others at the scene as evidence of her consciousness of guilt.

The jury found appellant guilty of first degree murder with a firearm. This appeal ensued.

On appeal, appellant argues that while evidence of pre-arrest, pre-*Miranda* silence is admissible under Florida law to impeach a defendant's trial testimony, her pre-arrest, pre-*Miranda* silence was inadmissible in this case because she did not testify at trial.[2]

A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review, but the court's discretion is limited by the rules of evidence and the applicable case law.  *Lopez v. State*, 97 So. 3d 301, 304 (Fla. 4th DCA 2012); *McCray v. State*, 919 So. 2d 647, 649 (Fla. 1st DCA 2006).

In *Salinas v. Texas*, 133 S.Ct. 2174, 2178-84 (2013), a plurality of the United States Supreme Court ruled that where a defendant does not expressly invoke the privilege against self-incrimination, the Fifth Amendment does not prohibit the prosecution from commenting on the defendant's pre-arrest, pre-*Miranda* silence.

---

[2] We find that appellant's objections below were broad enough to preserve this argument.  *Cf. State v. Hoggins*, 718 So. 2d 761, 764 n.5 (Fla. 1998) ("Hoggins phrased his objection in terms of the right to silence guaranteed by the Fifth Amendment of the United States Constitution.  However, we find that Hoggins' objection and the subsequent discussion of *Rodriguez* sufficiently alerted the trial court to the possibility of a violation of the defendant's rights guaranteed by the Florida Constitution.").

Under *Salinas*, the prosecutor's use of appellant's pre-arrest, pre-*Miranda* silence, which occurred before she invoked her constitutional rights, did not violate the federal Constitution. The question therefore becomes whether the comment on appellant's silence was nonetheless inadmissible under Florida law.

It is well-established that Florida courts are free to interpret the right against self-incrimination afforded under the Florida Constitution as affording greater protection than that afforded under the United States Constitution. *Rigterink v. State*, 66 So. 3d 866, 888 (Fla. 2011).

In *State v. Hoggins*, 718 So. 2d 761, 765, 769-72 (Fla. 1998), for example, the Florida Supreme Court held that the use of post-arrest, pre-*Miranda* silence to impeach a defendant's testimony at trial violates Florida's constitutional privilege against self-incrimination, even though such impeachment evidence is not barred by the Fifth Amendment.

The *Hoggins* court stated that its holding did not extend to pre-arrest silence, explaining that "prearrest, pre-*Miranda* silence can be used to impeach a defendant." *Id.* at 770. But the *Hoggins* court cautioned that such evidence is admissible "only if the silence was inconsistent with the defendant's testimony at trial." *Id.* at 770 n.11. The court further explained that "[e]ven if Florida's constitution did not preclude the use of Hoggins' post-arrest, pre-*Miranda* silence for impeachment purposes, Florida's rules of evidence would preclude its use because Hoggins' silence was not inconsistent with his trial testimony." *Id.* at 770. The court elaborated:

> In Florida, a defendant takes the stand in a criminal case subject to impeachment by prior inconsistent statements to the extent that the probative value of the prior inconsistent statements is not outweighed by the risk of unfair prejudice to the defendant. *The same rule applies to impeachment by prior silence, which is not precluded by the federal or state constitution. Thus, inconsistency is a threshold question when dealing with silence that may be used to impeach.* If a defendant's silence is not inconsistent with his or her exculpatory statement at trial then the [silence] lacks probative value and is inadmissible.

*Id.* at 770-71 (emphasis added; citations omitted).

The prosecutor in this case relied upon *Rodriguez v. State*, 619 So. 2d 1031 (Fla. 3d DCA 1993), *disapproved in part by State v. Hoggins*, 718 So.

2d 761 (Fla. 1998), to argue that pre-arrest, pre-*Miranda* silence was admissible. But *Rodriguez* merely held that the use of pre-arrest silence to impeach a defendant's credibility did not violate the Constitution.[3] *Rodriguez* did not hold that a defendant's pre-arrest silence could be admitted as substantive evidence of guilt.

Moreover, the *Hoggins* decision flatly states that a defendant's pre-arrest, pre-*Miranda* silence is admissible "only if the silence was inconsistent with the defendant's testimony at trial." 718 So. 2d at 770 n.11. Silence is generally deemed ambiguous, and a defendant may stand mute for reasons other than guilt. *See id.* at 771.

Here, evidence of appellant's pre-arrest, pre-*Miranda* silence was inadmissible under Florida law because appellant did not testify at trial. *Hoggins* thus precluded the use of appellant's pre-arrest, pre-*Miranda* silence in her interactions with police.[4] Because appellant did not make any exculpatory statements at trial, her pre-arrest, pre-*Miranda* silence lacked probative value and was inadmissible.

In short, the trial court erred in admitting evidence of appellant's pre-arrest, pre-*Miranda* silence. On this record, we cannot conclude that the error was harmless. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). We therefore reverse and remand for a new trial.

Nonetheless, we acknowledge that footnote 11 of the *Hoggins* opinion could arguably be characterized as dicta. We further note that *Hoggins* was decided before the United States Supreme Court's recent *Salinas* decision. In light of the need for clarity in the law, we certify the following question to the Florida Supreme Court as one of great public importance:

> WHETHER, UNDER FLORIDA LAW, THE STATE IS PRECLUDED FROM INTRODUCING EVIDENCE OF A

---

[3] The Florida Supreme Court disapproved *Rodriguez* to the extent that it contained overly broad language which might have suggested that even post-arrest, pre-*Miranda* silence may be admissible to impeach a defendant's trial testimony. *Hoggins*, 718 So. 2d at 770.

[4] Our holding is limited to appellant's silence in her interactions with police officers. It was permissible for the prosecutor to introduce evidence of silence or omissions by appellant in connection with her interactions with individuals who were not state actors. *See State v. Jones*, 461 So. 2d 97, 99 (Fla. 1984) (defendant's right to silence was not violated when the state elicited testimony that the defendant remained silent after a private store security officer detained her for shoplifting).

6

DEFENDANT'S PRE-ARREST, PRE-*MIRANDA* SILENCE WHERE THE DEFENDANT DOES NOT TESTIFY AT TRIAL?

*Reversed and remanded; question certified.*

WARNER, J., concurs.
KLINGENSMITH, J., dissents with opinion.

KLINGENSMITH, J., dissenting.

In my opinion, this court should follow the United States Supreme Court's decision in *Salinas v. Texas,* 133 S. Ct. 2174 (2013). While I agree with my colleagues that *Hoggins* suggests that evidence of appellant's pre-arrest silence was inadmissible where she did not testify at trial, *Hoggins* was nonetheless decided before the recent *Salinas* decision. Therefore, I believe the Supreme Court's ruling in *Salinas* should serve as controlling precedent here, and for that reason I respectfully dissent.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***