891 So.2d 1102 (2005)
Ronald H. ROBBINS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2745.
District Court of Appeal of Florida, Fifth District.
December 23, 2004.
Rehearing Denied January 31, 2005.
*1104 Benjamin S. Waxman of Robbins, Tunkey, Ross, Amsel, Raben, Waxman & Eiglarsh, P.A., Miami, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Rebecca Rock McGuigan, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, C.J.
Ronald Robbins appeals the judgment and sentence of life imprisonment imposed following the return of the jury verdict finding him guilty of second-degree murder with a firearm. Robbins raises three issues for us to resolve: 1) whether the trial court abused its discretion by denying a motion for mistrial based on the State's presentation of testimony regarding Robbins' failure to mention, at the time of his arrest, that the victim had attacked him with a knife and in overruling an objection to closing argument referencing this silence; 2) whether Robbins' due process rights were violated when the trial court denied his request for the appointment of an expert to assist him with the presentation of his justification defense; and 3) whether the trial court abused its discretion in permitting the State to present testimony from a medical doctor that the injuries Robbins sustained in the attack were not serious when the State failed to timely disclose the expert as a witness, thereby depriving Robbins of the opportunity to depose him.
Based on our review of the record, the trial court committed reversible error as to issues one and two. We, therefore, reverse the judgment and sentence and remand for a new trial. To explain why we have come to that conclusion, we will discuss the factual and procedural background followed by legal analysis of the first two issues in the order previously presented. Because the third issue becomes moot by virtue of our resolution of the first two issues, we will omit any discussion of the third issue.

Factual Background
Robbins met his friend, Kim Shannon, at a convenience store in the early morning hours shortly before the fatal incident occurred. Already at the convenience store were Jason Starkey, the victim, and Jason Coffman. Starkey and Coffman, both in their early twenties, had previously been bar-hopping and were ejected from the taxicab in which they had been riding. They went to the convenience store to call for another cab and that is where they encountered Shannon and Robbins. Shannon got out of her vehicle and went into the store to purchase some snacks while Robbins waited in his old van. Starkey and Coffman made comments to Shannon about her looks as she took the snacks to Robbins, but she ignored them. Apparently, as Shannon approached the van, Starkey persisted in his comments. Robbins, overhearing the comments, stated to Starkey and Coffman, "You boys are still in puberty."
Angered by the comment, Starkey chased Robbins as Robbins attempted to pull away in his van. Starkey jumped onto the passenger side running board, leaned in, and reached for Robbins through the open window. Robbins was successful in shaking Starkey off the van by alternately accelerating and braking, but, unfortunately, the maneuver caused the old van to stall and Robbins was unable to get it restarted. Undeterred, Starkey approached the driver's side window and hit *1105 Robbins in the head. Starkey repeatedly swung at Robbins, screaming at him. Robbins pushed open the driver's door, got out, and exchanged punches with Starkey. Robbins was hit several times in the head and was stunned. Starkey moved toward the store and began screaming and waving, apparently summoning Coffman for assistance. Coffman came out of the store and ran "full tilt" with Starkey to where Robbins was standing and began beating Robbins. Robbins tried to defend himself, but several of the punches connected with his head. Shannon testified that Coffman and Starkey were "beating the hell out of [Robbins]." Robbins was in pain and described himself as "lightheaded," "out of sorts," and "seeing stars."
As the attack continued, Robbins felt Coffman grab his wallet, which was chained to his belt. Robbins spun around and, at this point, Starkey and Coffman had Robbins pinned between them. Robbins then felt a poke or prick in the palm of his hand and believed that Starkey somehow had obtained the knife Robbins kept clipped to the inside of his waistband. Feeling more threatened by the knife Robbins believed Starkey had in his hand, Robbins pushed Starkey hard in the chest. This movement caused Robbins to stagger. As he was moving "right and downward," Robbins removed his gun from his pocket, pointed it where Starkey was last located and fired. The bullet hit Starkey in the back. Starkey ran a short distance before collapsing. Robbins' large pocket knife was subsequently found by the police on the ground in the vicinity of the fight.
Robbins drove himself to a police station to report the attack. After unsuccessfully attempting to get the attention of a police officer who was parked outside the front door of the station, Robbins drove from the parking lot to seek medical attention at a nearby hospital. Within blocks of the police station, Robbins was pulled over and handcuffed. Fire rescue was summoned to treat Robbins' wounds. When one of the police officers asked Robbins if he was all right, Robbins reported that he had been in a fight and had been hit with sticks and bottles, but did not report that a knife was used by his assailant.
Robbins was tried for, and convicted of, second-degree murder. With no prior record, Robbins scored in the range of 20.5 years to life and was sentenced to life in prison. The first issue he raises, which we address next, is whether the trial court abused its discretion by overruling objections and denying his motion for mistrial based on the State's elicitation of evidence and remarks during closing argument that when arrested, Robbins failed to mention that he had been attacked by the victim with a knife.

Presentation Of Evidence and Remarks During Closing Argument That Robbins Failed To Mention The Knife To The Police
During the trial, the State called one of the arresting officers, who testified that Robbins stated that he had been attacked with sticks and bottles. Outside the hearing of the jury, the State sought to proffer testimony from the officer that Robbins did not mention a knife. Counsel for Robbins objected based on Robbins' right of silence and the objection was sustained, thus making it clear to the prosecutor that he could not go further and elicit testimony that Robbins failed to mention the knife. Undaunted, the prosecutor called another officer and asked, "Did you ever hear him say anything about a knife?" and the officer answered, "No." Robbins immediately objected. The trial court sustained the objection, denied Robbins' motion for mistrial and gave a curative instruction to the jury to "[p]lease disregard any question about the defendant not mentioning a knife to the officer and the officer's response *1106 to that question." During closing argument the prosecutor made several references to Robbins' silence as to the knife, suggesting that if Robbins was truly defending himself from a knife attack, he would have told the police the full story. Then the prosecutor stated:
If this had been self-defense, why wouldn't he have explained what happened to Officer Walker and Officer Vahey when he's trying to explain his injury or telling them  why did he say these guys were trying to grab my wallet. I thought my knife was taken. I saw the glint of a knife. I thought, you know, someone had struck me.
....
Why not stick to the truth if what he said today from the stand is the truth. Most times the truth will set you free. But in this case he couldn't tell the truth that night to the police because he had shot someone in the back after a fight was over.
Unlike the federal courts that permit the introduction of post-arrest, pre-Miranda[1] statements for impeachment purposes,[2] the Florida Supreme Court has adopted a different view. State v. Hoggins, 718 So.2d 761 (Fla.1998). Based on its interpretation of article I, section 9 of the Florida Constitution, the court in Hoggins held that a prosecutor may not comment upon or attempt to impeach a defendant with his or her post-arrest, pre-Miranda or post-Miranda silence. This prohibition is premised upon the generally accepted principle that a defendant does not waive his or her right to remain silent at the time of arrest by testifying in his or her own defense at trial. The same test applies regardless of whether the evidence of post-arrest silence is admitted in the state's case in chief or during impeachment of the defendant: "If the comment is fairly susceptible of being construed by the jury as a comment on the defendant's exercise of his or her right to remain silent, it violates the defendant's right to silence." Hoggins, 718 So.2d at 769. The fairly susceptible standard is a "very liberal rule,"[3] which leads us to conclude that the questions and remarks during closing argument concerning the failure of Robbins to offer exculpatory statements about the knife after his arrest are fairly susceptible of being construed by the jury as comments on Robbins' right to silence. See State v. Smith, 573 So.2d 306, 317 (Fla.1990) (holding that the prosecutor's questions to the arresting officer regarding whether the defendant had said anything about being frightened of the victim or that he was *1107 acting in self-defense violated the defendant's constitutional right to silence).
Impermissible comments on a defendant's right to remain silent are subject to the harmless error analysis. Jones v. State, 748 So.2d 1012 (Fla.1999), cert. denied, 530 U.S. 1232, 120 S.Ct. 2666, 147 L.Ed.2d 279 (2000); Walker v. State, 701 So.2d 1258, 1261 (Fla. 5th DCA 1997) (citing State v. Marshall, 476 So.2d 150 (Fla.1985); State v. DiGuilio, 491 So.2d 1129 (Fla.1986), review denied, 717 So.2d 542, and cert. denied, 525 U.S. 858, 119 S.Ct. 142, 142 L.Ed.2d 115 (1998)); see also Heath v. State, 648 So.2d 660 (Fla.1994), cert. denied, 515 U.S. 1162, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995). This analysis requires that we determine whether the State has met its burden of proving beyond a reasonable doubt that the error did not contribute to the verdict. DiGuilio; Walker; see also Williams v. State, 863 So.2d 1189 (Fla.2003) (reaffirming the vitality of the harmless error standard established in DiGuilio). We believe that the State has not met this burden.
The record indicates that Robbins offered a prima facie case of self-defense. The improper testimony and repeated argument by the prosecutor relating to Robbins' silence and the fact that he had not mentioned the knife at the time he was arrested were clearly prejudicial, not isolated, and went to the heart of Robbins' self-defense theory. Robbins testified to his fear and belief of great bodily harm or imminent death, supported by the fact that the two much younger men attacked him and beat him in the head and face. He believed that he had been stuck with the knife and, in fact, his knife was later found by the police in the vicinity of the fight. By eliciting testimony of Robbins' failure to mention the knife and by presenting closing argument that emphasized his silence, Robbins was so prejudiced that he was denied a fair trial.
The State attempts to avert the pangs of reversal and the burdens associated with a new trial by arguing that the curative instruction cured the harm caused by the improper testimony and that a timely objection was not made to the improper remarks during closing argument. The curative instruction did not cure the prejudice caused by the improper testimony, and even if we were to believe it had, the prosecutor capitalized on the improper testimony by repeatedly emphasizing Robbins' silence and failure to disclose the knife during closing argument. Hence, any curative effect the instruction may have had was eviscerated by the improper comments made by the prosecutor during closing arguments. As to the fact that Robbins failed to immediately object to those remarks, when the objection was made the trial court overruled the objection based on its conclusion that the remarks were proper. Therefore, an earlier objection would not have secured a different outcome and the improper comments would still have been presented to the jury. In any event, while it is clear that the jury's unfettered receipt of the prosecutor's improper remarks during his closing argument worked to the disadvantage of Robbins and impeded his right to a fair trial, the improper testimony elicited from the officer alone is sufficient to warrant reversal.
We are aware that a ruling on a motion for mistrial is within the sound discretion of the trial court and that such a motion should be granted only when it is necessary to ensure that a defendant receives a fair trial. Cole v. State, 701 So.2d 845 (Fla.1997). As we have explained, because of the improper comment on Robbins' right of silence, Robbins was denied a fair trial. Accordingly, the trial court abused its discretion in denying Robbins' motion for mistrial. Moreover, as we will *1108 next explain, the trial court abused its discretion in failing to appoint an expert to assist Robbins with his justification defense.

Failure To Appoint An Expert
Prior to trial, Robbins filed a motion to appoint an expert to assist in the preparation of his defense. Specifically, the motion alleged that the expert was needed to assist in determining Robbins' state of mind at the time of the offense. The expert was imperative, Robbins alleged, because he did not deny shooting the victim and raised self-defense as his justification. Notably, the State filed a response indicating that it did not object to the request.
Because the appointment of an expert is a matter of discretion, we must determine whether the trial court abused its discretion in denying Robbins' motion. See Martin v. State, 455 So.2d 370, 372 (Fla.1984) ("The appointment of experts is discretionary. The test for overturning a trial court ruling on appointing an expert is whether there has been an abuse of discretion.") (citation omitted); Cade v. State, 658 So.2d 550 (Fla. 5th DCA), review denied, 663 So.2d 631 (Fla.1995). In order to decide whether a trial court abused its discretion in failing to appoint an expert, a two-part test must be applied which requires us to determine: 1) whether the defendant established the need for an expert with sufficient particularity; and 2) whether the denial of the request for appointment of an expert prejudiced the defendant. San Martin v. State, 705 So.2d 1337, 1347 (Fla.1997), cert. denied, 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998).
Robbins specifically identified the need for the expert by explaining in his motion that it was imperative to his theory of self-defense that his state of mind at the time of the offense be determined. "A person is justified in using deadly force in self-defense if he or she reasonably believes such force is necessary to protect one's self from imminent death or great bodily harm. The circumstances must be such that the defendant had cause to think loss of life or serious injury is imminent." Curington v. State, 704 So.2d 1137, 1139-40 (Fla. 5th DCA 1998) (citations omitted).[4] Certainly, a defendant's state of mind at the time of the offense is relevant when self-defense is an issue. Here, Robbins' perception and state of mind at the time he shot the victim are the foundation of his theory of self-defense. Robbins never denied that he shot the victim; his entire defense was that he did so out of necessity in order to preserve his own life or to prevent great bodily harm to himself. Specifically, Robbins claimed that the injuries he sustained in the beating (as independently evidenced by photographs of his head taken hours after the attack) affected his perception of the situation and the timing of his reactions. He testified that he was stunned, dazed, and seeing stars as a result of the injuries he received at the hands of Starkey and Coffman. Accordingly, Robbins clearly established the need for expert testimony regarding this issue.
Moreover, the presentation of the testimony of the emergency room doctor, Dr. Kocisko, who examined Robbins after the incident, made the need for the expert witness to assist Robbins even more apparent. Although Dr. Kocisko could not remember examining Robbins, he was allowed to testify from his notes and medical records, which showed that his opinion at the time was that the injuries sustained by Robbins were minimal. This made it necessary for Robbins to present his own *1109 expert witness who would have testified that the injuries affected Robbins' perception and slowed or hampered his reaction times, which was directly relevant to the element of the justifiable use of deadly force. By allowing the State to produce Dr. Kocisko's opinion, but denying Robbins the opportunity to present a contrary expert opinion, Robbins was certainly unduly prejudiced.

Conclusion
We conclude that the trial court abused its discretion in denying Robbins' motion for mistrial and in failing to provide an expert to assist him with his justification defense. Because he was denied a fair trial, Robbins is entitled to a new one. We reverse the judgment and sentence imposed on Robbins and remand this case for a new trial.
REVERSED AND REMANDED.
SHARP, W. and GRIFFIN, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Fletcher v. Weir, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). In Fletcher, the court reasoned that in the post-arrest, pre-Miranda context, it is not improper or unfair to use a defendant's silence against him absent the "affirmative assurances embodied in the Miranda warnings...." Id. at 607, 102 S.Ct. 1309. Nevertheless, the impeachment testimony must be otherwise admissible under the pertinent rules of evidence. However, the federal courts have also held that in the post-arrest, post-Miranda context, a defendant's silence may not be used for impeachment purposes unless a defendant testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); United States v. Johnson, 302 F.3d 139 (3d Cir.2002), cert. denied, 537 U.S. 1140, 123 S.Ct. 937, 154 L.Ed.2d 836 (2003). We note, parenthetically, the statement in Portuondo v. Agard, 529 U.S. 61, 74, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000), that "[a]lthough there might be reason to reconsider Doyle, we need not do so here." Despite this harbinger, Doyle appears to remain good law today.
[3] State v. DiGuilio, 491 So.2d 1129, 1131 (Fla.1986).
[4] See also § 776.012, Fla. Stat. (2002); Fla. Std. Jury Instr. (Crim.) § 3.04(d), at 46.