958 So.2d 377 (2007)
Larry DIAZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-1655.
District Court of Appeal of Florida, Third District.
February 7, 2007.
Rehearing Denied June 15, 2007.
*379 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and John D. Barker, Assistant Attorney General, for appellee.
Before COPE, C.J., and SHEPHERD, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
Larry Diaz ("Diaz") appeals a judgment of conviction for armed robbery, claiming that reversal is mandated as: (1) the State impermissibly commented on his right to remain silent, (2) the trial court committed reversible error in the curative instruction it gave after Diaz violated an order in limine, and (3) the motion for judgment of acquittal should have been granted as the State did not rebut his reasonable hypothesis of innocence. After carefully reviewing the entire record, we affirm.
*380 The issue at trial was whether Diaz was involved in an armed robbery of a Westar gas station. Diaz claimed that he was unaware that the co-defendant, Juan Carlos Fernandez ("Fernandez"), intended to commit the robbery; that he was not involved in the robbery; and that he was forced by Fernandez, at gunpoint, to drive him away from the scene of the robbery.
The evidence at trial established that Fernandez robbed a cashier at a Westar gas station at gunpoint while wearing a mask. Additionally, a witness saw Fernandez leaving the station still wearing the mask and carrying the gun, and then observed him getting into Diaz's vehicle, which was opened for him from the inside. When law enforcement stopped the vehicle, Diaz was driving and Fernandez was seated in the front passenger seat. After the stop, law enforcement observed in plain view a black bag, with money sticking out of it, on the floor behind the driver's seat. A search of the vehicle, which Diaz consented to, revealed that the bag contained $160.00 and a .45 caliber semi-automatic gun. A pair of black gloves was located on the driver's seat floor mat, a white grocery bag containing more money was located in between the driver and the passenger seats, and a .38 caliber revolver and mask were found under the front passenger seat.
Diaz testified at trial that, on the day of the robbery, Fernandez called him and said that he wanted to "hang out" with him. Diaz picked Fernandez up, they went out to breakfast, and they drove to a shooting range. Diaz testified that he kept two firearms in a black bag in the trunk of his car. After driving to the shooting range, however, Diaz claimed that he realized he only had $15.00 with him, and therefore, decided to drive to an ATM machine to obtain additional funds. Diaz testified that on the way to the ATM machine, he stopped at a Hess station to buy some gas. He claimed he left Fernandez in the car and went inside the Hess station to prepay for the gas, but when he returned, Fernandez was no longer in the car. After waiting for a minute or so, he claimed he saw Fernandez walking quickly from the Westar gas station across the street with a white bag in his hands, and drove over to pick him up. He denied seeing Fernandez carrying a gun or seeing a ski mask. Diaz testified that when Fernandez got into the car, he pulled a gun out from under his shirt, pointed it at Diaz's head, ordered him to drive, and threatened to kill him if he did not. Diaz testified that he drove the car at gunpoint until he saw a police officer, at which point he drove towards the officer and was stopped by the police. He explained that upon being stopped by the police, he exited the car and told the officer that he had nothing to do with the robbery. Additionally, he testified in direct examination that while being transferred to the police station, Fernandez threatened to kill him if he talked to the police:
Q. What happened after you got close to the cop?
A. I told them, they told me from a distance to stop the car and I did so and put the hand on, I put my hand on the wheel. And Officer Bello I believe was the one that testified yesterday asked me to turn off the car. I did, to exit the car. I did. I put my hands on top of the car and I explained that I have nothing to do with that and of course at that time Juan is like trying to hide the money and, you know, and throw things around and whatever and I am outside and he is on the other side and then they handcuffed us together and took us to the Hialeah police station.

*381 Q. Well, what happened when they handcuffed you together?
A. Okay. That is very interesting. They put us in the same car together in the back of [sic] car and the first thing that he said is, "man, if you talk you are dead. If you talk against me, you are dead."
Q. That is what Juan said?
A. That is what he said to me that if I said anything against him that I was dead and I kept quiet.
(Emphasis added).
On cross-examination, the State elicited testimony from Diaz over defense objection, that while he told the police that he was not involved, he did not tell the police that Fernandez had forced him to drive at gunpoint.
Q. And when you were pulled over by the police, you know, you said something very interesting on direct, you said that you told Sergeant Bello that you didn't have anything to do with this; is that correct?
A. Absolutely, yes.
Q. You didn't tell Sergeant Bello that he is making me do this, that he had a gun to my head and he told you to drive away did you?
A. No, I didn't say that.
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
Q. You didn't tell him that he has a gun and he was pointing it at me the whole time, I was afraid, did you?
A. No.
Q. In fact, you didn't tell any of those police officers that, did you?
A. No, I was in shock.
During closing arguments, the State reminded the jury that, while Diaz testified that he was forced to drive at gunpoint, he did not tell this to the police when they stopped him. The defense timely objected, the objections were overruled, and Diaz's motion for mistrial was denied, as was his motion for a new trial.
The first issue on appeal is whether the State committed reversible error by commenting upon the defendant's right to remain silent. A review of the record demonstrates that the State did not commit reversible error.
Under Florida constitutional law, a prosecutor is prohibited from commenting upon, or attempting to impeach a defendant with, the defendant's silence at the time of his arrest prior to the receipt of his Miranda warnings. Art. I, § 9, Fla. Const. (prohibiting a defendant from being compelled to be a witness against himself); State v. Hoggins, 718 So.2d 761 (Fla.1998); Robbins v. State, 891 So.2d 1102 (Fla. 5th DCA 2004). This prohibition applies to all comments that are fairly susceptible of being interpreted by the jury as a comment upon silence. Hoggins, 718 So.2d at 769; State v. Smith, 573 So.2d 306, 317 (Fla.1990). Given the statements documented in this opinion, we normally would have concluded that, when the State asked Diaz if he had told the police when they pulled him over that Fernandez was forcing him to drive at gunpoint, it constituted an impermissible comment on Diaz's right to remain silent. Consequently, we would have found that the trial court erred in overruling Diaz's objection. Based upon a review of the record, however, we find no error, as Diaz put his failure to tell the police that he was forced to drive at gunpoint at issue during his direct examination testimony, which the State properly inquired about in cross-examination.
It is undisputed that Diaz offered unsolicited exculpatory statements to the police when he was stopped. Diaz, himself, *382 testified on direct examination that when he was stopped by the police, he told them he had nothing to do with the robbery. More importantly, in direct examination, prior to any inquiry by the State, Diaz specifically offered an explanation as to why, after telling the police he had nothing to do with the robbery, he did not tell them that Fernandez was holding a gun to his head or that he had forced him to drive. Specifically, Diaz testified in direct examination that he did not provide this information to the police because Fernandez threatened to kill him if he did. As Diaz provided an explanation to the jury regarding why he did not provide this information to the police during direct examination, we conclude that the State's questioning of Diaz in cross-examination amounted to a mere clarification of what Diaz had himself already told the jury. We, therefore, find no error in the State's cross-examination or closing argument.
The dissent relies on Hoggins, Smith, Robbins and Hosper v. State, 513 So.2d 234, 235-37 (Fla. 3d DCA 1987), in concluding that the inquiry by the State resulted in a comment upon Diaz's right to remain silent. However, in none of the cases relied upon, does the defendant, himself, provide an explanation of why he did not provide additional information to law enforcement prior to the State's questioning of the defendant, as occurred in the instant case. In Smith, the testimony was actually elicited by the State as substantive evidence to establish the defendant's guilt in its case-in-chief, through its own witness. At no time did the defendant open the door to the testimony. Thus, the evidence was neither invited by the defendant nor cumulative of his own testimony to the jury.
While we find no error based upon the fact that Diaz, himself, offered the objected-to evidence, prior to any questioning by the State, even if we were to find that the State's cross-examination of Diaz and the argument to the jury were error, we would conclude that it was harmless beyond a reasonable doubt. The Florida Supreme Court and this court have held that comments a jury may interpret as a comment upon the defendant's silence are subject to the harmless error doctrine. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); Robbins, 891 So.2d at 1107; Hosper, 513 So.2d at 236 (Fla. 3d DCA 1987). "The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." DiGuilio, 491 So.2d at 1135. We find this test was met in the instant case.
Our finding that the error was harmless beyond a reasonable doubt is supported by the evidence. Diaz claimed he did not have any knowledge or involvement in the robbery prior to Fernandez entering his car, pulling out a gun, and ordering him to drive. An independent witness testified at trial, however, that he saw Fernandez exiting the store with a gun in his hand and a mask on, and saw him get into Diaz's car after Diaz opened the door from inside of the vehicle for Fernandez. Diaz testified that he kept his black bag with two guns in it in the trunk of his car. The bag was, however, found in the backseat with one gun, and the other gun was found under the front passenger seat along with the mask. A pair of black gloves was found on the driver's floorboard. Diaz claimed that they went to breakfast, stopped for gas, and were going to get some money at an ATM because he only had $15.00. However, when the police searched the vehicle, they found money in a plastic bag between *383 the driver's seat and passenger seat, plus $160.00 and a gun in Diaz's black bag behind the driver's seat. Thus, money taken in the robbery somehow ended up in Diaz's black bag in the backseat behind Diaz, even though, according to Diaz, Fernandez, who was seated in the front passenger seat, never put down the gun that he was supposedly pointing at Diaz. Diaz claimed he saw no gun or mask, while a witness saw Fernandez exiting the store with these items clearly visible, and getting into Diaz's awaiting vehicle. These items were found under the passenger seat, not concealed on Fernandez's person. Diaz claimed Fernandez was forcing him to drive at gunpoint, yet the officer saw no evidence of that when he stopped them, and if Fernandez was controlling Diaz with the gun, it is not reasonable that he would have allowed Diaz to intentionally drive towards the police. Therefore, based upon the evidence presented and Diaz's unsolicited explanation of why he did not tell the police he was forced to drive at gunpoint, the comments made by the State in cross-examination and closing argument would, if error, constitute harmless error.
The second claim argued on appeal is that the trial court erred in giving the curative instruction it gave when Diaz intentionally violated the trial court's order in limine precluding him from testifying that he had never been arrested before. We agree.
During his testimony, Diaz stated, "I was totally shocked. . . . I am a 44 year old man, never been arrested." The State objected to this statement. The trial court sustained the objection and gave the following curative instruction:
Okay. Ladies and gentlemen, Mr. Diaz's comment that he has never committed a crime before is something that you are not to consider in any way, shape or form. He stands here accused of the crime of armed robbery. If in fact, he did commit this crime, robbers have to start somewhere. That is why the fact that he has no priors, if that is in fact true, is completely meaningless. Because when somebody commits a crime it is their first crime, whether it is a murder or a robbery or a theft or a burglary or anything else. There is always a first crime. You are to evaluate the evidence to determine whether or not the evidence proves that he committed this crime. There is no value at all to a suggestion that it is the first crime so therefore he should walk or he should be acquitted. He should be acquitted if the evidence didn't prove that he is guilty. If the evidence convinces you that he is guilty, then it is his first crime. That is why it is completely merit-less and you should disregard it, okay. Thank you.
Diaz asserts that this statement tended to express the judge's view as to his credibility and guilt and destroyed the impartiality of the trial judge. Before addressing the merits of this argument, we feel compelled to address the testimony that gave rise to the complained-of curative instruction. Prior to trial, the State moved in limine to preclude Diaz from testifying regarding his lack of a prior criminal record. The motion was granted and Diaz's attorney specifically informed him of the court's ruling and instructed Diaz not to testify that he had never been arrested before. Despite the trial court's ruling and his lawyer's admonition, Diaz told the jury, totally unsolicited:
"That is what he said to me that if I said anything against him that I was dead and I kept quiet. And I was totally shocked. I mean, I am a 44 year old man, never been arrested."
We find that this statement, which violated the motion in limine, the trial court's *384 order, and his own lawyer's instructions, was not inadvertent and resulted in the curative instruction given by the trial court. The complained-of instruction would not have been given had Diaz simply complied with the trial court's order and his lawyer's instructions.
In addressing the merits of Diaz's argument, we agree that the trial court's curative instruction went too far and was improper. We do not, however, conclude that the instruction, when viewed in its entirety, either expressed the judge's view as to the credibility and the guilt of the defendant or destroyed the impartiality of the trial judge. The instruction, as a whole, makes it clear that the trial court was not commenting on the evidence, did not infer Diaz's guilt, and cautioned the jury that it should find Diaz not guilty if the evidence did not prove that he committed the crime. The trial court instructed the jury, in part, as follows:
He stands here accused of the crime of armed robbery.
. . .
You are to evaluate the evidence to determine whether or not the evidence proves he committed the crime. . . .
. . .
He should be acquitted if the evidence didn't prove he is guilty. Since the objectionable comments were given within the context of a larger instruction, which explained to the jury that whether Diaz had been previously arrested was not relevant, and emphasized that he should be found not guilty if the evidence did not prove he committed the crime, we find that there is no reasonable possibility that the error contributed to Diaz's conviction. See State v. DiGuilio, 491 So.2d at 1135.
The final argument raised on appeal is that the trial court erred in denying Diaz's motions for judgment of acquittal as the conviction was wholly based upon circumstantial evidence and the State failed to present sufficient evidence to exclude Diaz's reasonable hypothesis of innocence. Our review of Diaz's motion for judgment of acquittal is de novo, see Boyd v. State, 910 So.2d 167, 180 (Fla.2005); Tibbs v. State, 397 So.2d 1120 (Fla.1981), viewing the evidence in the light most favorable to the State. Boyd, 910 So.2d at 180; Banks v. State, 732 So.2d 1065 (Fla.1999). When, as here, the State's evidence is wholly circumstantial, there must not only be sufficient evidence establishing each element of the offense, but there must also be sufficient competent evidence to exclude every reasonable hypothesis of innocence. See Orme v. State, 677 So.2d 258 (Fla. 1996). The State, however, is not required to conclusively rebut Diaz's claims. It need only introduce evidence which is inconsistent with Diaz's theory of events. See Toole v. State, 472 So.2d 1174 (Fla. 1985). It then becomes the jury's task to determine if the evidence presented is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. State v. Law, 559 So.2d 187, 188-89 (Fla.1989).
Based upon the evidence presented (and briefly mentioned earlier in this opinion), we conclude that the State clearly met its burden and that in viewing the evidence in the light most favorable to the State, there was sufficient competent evidence presented from which the jury could exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Affirmed.
SHEPHERD, J., concurs in result.
COPE, C.J. (concurring in part and dissenting in part).
We should reverse the conviction and remand for a new trial. First, there was *385 an impermissible comment on silence. Second, the trial court gave a curative instruction to the jury which  whether intended or not  conveyed that the judge believed the defendant to be guilty.

I.
The trial court erred by overruling the defense objection to State cross-examination which amounted to a comment on silence.
According to the defendant's testimony, he and co-defendant Juan Carlos Fernandez were driving to a gun range for target practice. The defendant was the driver and Fernandez was the passenger.
The defendant stopped at a Hess gas station to buy gas and use an automatic teller machine. When the defendant came outside Fernandez was nowhere to be seen. After a minute or two, the defendant saw Fernandez walk out of a Westar gas station across the street with a bag in his hands. The defendant drove over to pick him up.
Fernandez had just held up the Westar station and the bag contained the money. Fernandez got into the passenger side of the defendant's car. Diaz testified that he did not know Fernandez was going to rob the station. When Fernandez got into the car, he pulled a gun and said, "Larry, I am sorry I had to do this, but I needed to do it. And drive or I will kill you." TR. 222. The defendant drove as ordered.
Soon the defendant saw some police officers and drove toward them. The police stopped the car and ordered both men to get out. At this point the defendant was in custody but had not been given Miranda[1] warnings. The defendant testified, "I put my hands on top of the car and I explained that I have nothing to do with that and of course at that time Juan is like trying to hide the money. . . ." TR. 224.
On cross-examination the State asked whether the defendant told the arresting officer that Fernandez held a gun to the defendant's head. The defense objection was overruled. The cross-examination was:
Q. And when you were pulled over by the police, you know, you said something very interesting on direct, you said that you told Sergeant Bello that you didn't have anything to do with this; is that correct?
A. Absolutely, yes.
Q. You didn't tell Sergeant Bello that he is making me do this, that he had a gun to my head and he told you to drive away, did you?
A. No, I didn't say that.
MRS. LEWIS: Objection.
THE COURT: Overruled.
Q. You didn't tell him that he has a gun and he was pointing it at me the whole time, I was afraid, did you?
A. No.
Q. In fact, you didn't tell any of those police officers that, did you?
A. No, I was in shock.
TR. 228-29.
Under applicable Florida precedent, the objection should have been sustained.
It is of course settled that the defendant has a right to remain silent and no comment can be made at trial on the defendant's exercise of that right. See State v. Hoggins, 718 So.2d 761, 770-71 (Fla.1998).
In this case the defendant was in custody and had not yet been given Miranda warnings. He made a volunteered statement that he had nothing to do with the crime, but said nothing else and gave no *386 details. Under Florida law, if a defendant makes a volunteered statement of fact A, the prosecution is not allowed to comment that the defendant failed to state fact B.
The case of State v. Smith, 573 So.2d 306, 317 (Fla.1990), is very similar to this one. In Smith, the defendant said at the scene of the crime, "You've got the wrong person. I haven't done anything." 573 So.2d at 317 (internal quotation marks omitted). He also said, "I just shot someone. He was going for my daughter." Id. Over objection, the trial court then allowed the prosecution to ask the sheriff's deputy the following:
Q [By Mr. Miller] Deputy, at the time you heard these statements being made to Deputy Cosimi, what, if anything, did this defendant say about being frightened of the victim of this case?
A None.
. . . .
Q [By Mr. Miller] What, if anything, did you overhear the defendant say at that time about his daughter being sexually assaulted by the victim in this case?
A None.
Smith, 573 So.2d at 317. The Florida Supreme Court ruled that this was reversible error.
"The prosecution is not permitted to comment upon a defendant's failure to offer an exculpatory statement prior to trial, since this would amount to a comment upon the defendant's right to remain silent." Id.; see also State v. Hoggins, 718 So.2d 761, 770-71 (Fla.1998); Robbins v. State, 891 So.2d 1102, 1106-07 (Fla. 5th DCA 2004); Hosper v. State, 513 So.2d 234, 235-37 (Fla. 3d DCA 1987). The majority opinion agrees that these are the rules.
According to the prosecutor, it was not enough for the defendant to blurt out (after his car was stopped) that he had nothing to do with the robbery. According to the State, the defendant should have said that he had nothing to do with the robbery AND that Fernandez held a gun to his head. The cross-examination on this point clearly violated Smith, Hoggins, Robbins, and Hosper.
The majority opinion states the foregoing cases are inapplicable. The majority maintains that the defendant's testimony opened the door to being cross-examined on this issue. The majority opinion says that in his direct examination the defendant testified (a) that he said nothing to the police about Fernandez holding a gun to his head because (b) Fernandez threatened to kill him if he did.
Respectfully, the majority opinion is wrong about the time line. The defendant did not testify that Fernandez told the defendant to keep silent at the time the police officers stopped the car. The defendant testified that Fernandez' threat came after his volunteered statement, not before.
In the direct examination the defendant testified:
A. . . . I put my hands on top of the car and I explained that I have nothing to do with that and of course at that time Juan is like trying to hide the money and, you know, and throw things around and whatever and I am outside and he is on the other side and then they handcuffed us together and took us to the Hialeah police station.
Q. Well, what happened when they handcuffed you together?
A. Okay. That is very interesting. They put us in the same car together in the back of car and the first thing that he said is, "man, if you talk you are dead. If you talk against me, you are dead."
Q. That is what Juan said?

*387 A. That is what he said to me that if I said anything against him that I was dead and I kept quiet.
TR. 224.
Thus the defendant testified to the time line as follows: (1) the police officers stopped the defendant's car; (2) the defendant said he had nothing to do with it; (3) the police handcuffed the defendant to Fernandez and put them in the police car; (4) Fernandez told the defendant he would kill the defendant if he spoke against Fernandez. According to this testimony, the defendant's proclaiming of his innocence (step (2)) came before Fernandez' threat (step (4)).
The entire reason for the State's cross-examination was to bring out a point that the defendant had not made in his direct testimony. The State's question to the defendant was whether, in his volunteered statement at roadside, he ever told the police that Fernandez held a gun to his head. The defendant had not testified about this on direct examination.
The cross-examination was impermissible. The State cannot cross-examine by asking whether, in his volunteered statement, the defendant failed to include other exculpatory matters. Smith, 573 So.2d at 317.
I am unable to agree that the error was harmless. The State repeated in closing argument its assertion that an innocent person would have blurted out that he had been held at gunpoint, and this defendant did not. The cross-examination was not merely cumulative of the direct examination. The majority opinion argues that there was other evidence of the defendant's guilt, majority opinion at 282-83, but that is not enough to satisfy the requirement that the error must be harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).

II
The defendant's second issue is also meritorious. We simply cannot sustain a trial court's instruction which  referring to the defendant  tells the jury that "robbers have to start somewhere." TR. 225.
Prior to trial the State obtained an order in limine prohibiting the defendant from saying, in front of the jury, that he had never been arrested. The trial court granted the motion.
During the defendant's testimony quoted above, the defendant testified that he was threatened by Fernandez after the two were handcuffed and put in the back of the police car. The defendant testified that Fernandez said, "man, if you talk you are dead. If you talk against me, you are dead." TR. 224.
The following then transpired:
Q. That is what Juan said?
A. That is what he said to me that if I said anything against him that I was dead and I kept quiet. And I was totally shocked. I mean, I am a 44 year old man, never been arrested.
TR. 224.
The State objected and the trial court called for a sidebar conference.
THE COURT: You are so not going to like the curative instruction that I am about to give this jury, okay.
MRS. LEWIS: Just so that we are clear he was instructed not to say that.
THE COURT: Okay. I am going to tell the jury that a person who commits a crime always starts with a clean record. That an armed robber at some point has no record and if they commit an armed robbery they are still a person without a prior record and that is why it is completely meaningless that he threw that out for his consideration.

*388 MR. SISSELMAN: Note our objection to the instruction talking about an armed robber. You can say that whether a person has or does not have a prior conviction is not relevant.
THE COURT: He is accused of an armed robbery. I don't have a problem.
MR. SISSELMAN: Note our objection.
TR. 224-25.
The trial court then instructed the jury as follows:
THE COURT: Okay. Ladies and gentlemen, Mr. Diaz's comment that he has never committed a crime before is something that you are not to consider in any way, shape or form. He stands here accused of the crime of armed robbery. If, in fact, he did commit this crime, robbers have to start somewhere. That is why the fact that he has no priors, if that is in fact true, is completely meaningless. Because when somebody commits a crime it is their first crime, whether it is a murder or a robbery or a theft or a burglary or anything else. There is always a first crime. You are to evaluate the evidence to determine whether or not the evidence proves that he committed this crime. There is no value at all to a suggestion that it is the first crime so therefore he should get a walk or he should be acquitted. He should be acquitted if the evidence didn't prove that he is guilty. If the evidence convinces you that he is guilty, then it is his first crime. That is why it is completely meritless and you should disregard it, okay. Thank you. Let's continue.
TR. 226 (emphasis added).
Respectfully, this curative instruction cannot stand. The court told the jury that "robbers have to start somewhere," and went on several times to say that there is always a first crime. Whether the trial court meant to do so or not, these remarks convey the idea that the court believed the defendant to be guilty.
Under Florida law a trial judge "should avoid making any remark[] within the hearing of the jury that is capable directly or indirectly, expressly, inferentially, or by innuendo of conveying any intimation as to what view he takes of the case or that intimates his opinion as to the weight, character, or credibility of any evidence adduced." Seward v. State, 59 So.2d 529, 531 (Fla.1952) (citation and internal quotation marks omitted).
The Seward case is similar to the present one. In Seward the trial court said:
Before we go into that, I want to instruct the Jury that you will disregard any statement that this defendant made touching upon his wife's use of narcotics. That was not responsive to any question that had been asked. It wouldn't make any difference if she were a narcotic addict. You don't have the right to kill people for narcotic addiction. And, even if you were entitled to kill them for narcotic addiction, it would have to be done after a trial. They have Courts to try and condemn persons and individuals are not permitted to do it.
Id. (emphasis added).
The Seward court said, "Such a statement made in the presence of the jury was the equivalent of expressing an opinion that the defendant had attempted to kill the prosecuting witness because of her narcotic addition." Id. The court reversed for a new trial.
This court has said that where a judicial "comment expresses or tends to express the judge's view as to the weight of the evidence, the credibility of a witness, or the guilt of an accused, it thereby destroys the impartiality of the trial to which the *389 litigant or accused is entitled." Hamilton v. State, 109 So.2d 422, 424-25 (Fla. 3d DCA 1959). See also § 90.106, Fla. Stat. (2004); Charles W. Ehrhardt, Florida Evidence § 106.1 (2006); Jacques v. State, 883 So.2d 902, 905-06 (Fla. 4th DCA 2004); Acosta v. State, 711 So.2d 225, 227 (Fla. 3d DCA 1998).
When the trial judge told the jury in this case that "robbers have to start somewhere," and that "[t]here is always a first crime," he sent a signal to the jury (whether intended or not) that the defendant was guilty. As in Seward, that was reversible error, and cannot be deemed to be harmless error.[2] For this additional reason there should be a new trial.

III.
The final point on appeal is the defendant's claim that the evidence was legally insufficient to convict him and that his motion for judgment of acquittal should have been granted. I concur with the majority that the evidence was legally sufficient.

IV.
For the stated reasons, we should reverse for a new trial.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] According to the majority opinion, the defendant's statement that he had never been arrested violated the order in limine, which is true. The majority opinion goes on, however, to make a "finding" that the violation "was not inadvertent. . . ." Majority opinion at ___ (emphasis added). Respectfully, we are a reviewing court, not a fact-finding court. The trial court made no finding about whether the violation was intentional or unintentional.