WALLACE, Judge.
Christopher Leon Franklin (the Former Husband) challenges a qualified domestic relations order (QDRO) distributing a share of his employee stock ownership plan (ESOP) to Donna D. Patterson-Franklin, n/k/a Donna D. Patterson (the Former Wife). There is no cross-appeal. Although the circuit court’s calculation of the Former Wife’s distributive share of the Former Husband’s ESOP is not correct, the Former Husband failed to present to the circuit court the legal argument or ground upon which he now relies for reversal. Accordingly, we affirm the circuit court’s order.
I. THE FACTUAL BACKGROUND
The Former Husband is an employee of Publix Super Markets, Inc. Through his employment at Publix, the Former Husband had an ESOP account and a 401(k) plan. The Former Wife had an Individual Retirement Account (IRA) and a Roth IRA. All of the parties’ retirement accounts had both a premarital and a marital component. The Former Wife also owned some stocks that were marital assets.
In June 2009, the circuit court held a hearing at which the parties announced their agreement on multiple issues relating to their pending petitions for the dissolution of their marriage. Pertinent to the issues on appeal, the parties agreed to equally divide the Former Wife’s stocks and the marital gains on their retirement accounts. The parties identified the Former Wife’s stocks and the premarital and the postseparation values of the parties’ retirement accounts and the corresponding marital values of those accounts. They ultimately incorporated these amounts into the stipulated final judgment of dissolution of marriage entered in September 2009.
The total value of the Former Wife’s stocks, which were marital assets, was $20,808.95. The premarital and the postseparation values of the Former Wife’s IRA were $19,634.20 and $63,179.01, respectively, resulting in a marital value of $43,544.81. The premarital and the postseparation values of the Former Wife’s Roth IRA were $58,877.71 and $207,787.94, respectively, resulting in a marital value of $148,910.23. The premarital and the postseparation values of the Former Hus *734 band’s ESOP were $82,901.15[1] and $487,927.35, respectively, and the circuit court calculated a marital value of $405,025.85.[2] The premarital and the postseparation values of the Former Husband’s 401(k) were $21,293.65 and $173,945.55, respectively, resulting in a marital value of $152,651.90. These figures yield a total marital value for the stocks and retirement accounts of $770,941.74. The circuit court calculated the value of each parties’ marital portion of the stock and retirement accounts at $385,475.87.[3]
At the hearing held in June 2009, the parties also agreed to divide equally the marital debt. The Former Wife’s counsel noted with regard to the marital debt in the Former Husband’s name, “that he’s ahead of her about $20,000.00, $30,000.00, those would have to then be offset from the qualified domestic relations order as to the retirement accounts because that’s the only deep pocket of cash, if you will.” Later, the Former Husband’s counsel noted that the Husband’s total marital debt was $131,322.01, while the Former Wife’s marital debt was $65,543.72, “so the husband is actually taking $65,778.29 more in debt but that would be applied as an offset against what [the] wife will take from [the] husband’s retirement.” Here, the Former Husband’s counsel misspoke. The entry of an order transferring the entire excess debt of $65,778.29 to the Former Wife simply results in having the Former Wife take on $65,778.29 more of the marital debt than the Husband. Instead of transferring the entire amount of the Former Husband’s excess debt to the Former Wife’s column, the circuit court should have divided that amount equally between the parties, thereby reducing the Former Wife’s share of the stock and retirement accounts by $32,889.15. Unfortunately, no one caught this mistake.[4] Instead, in the stipulated final judgment, the circuit court used the entire $65,778.29 amount as a debit to any amount due to the Former Wife as her share of the distribution of the stocks and retirement accounts.
In the stipulated final judgment, the circuit court found that the Former Wife held in her name stocks and retirement accounts totaling $213,263.99, which it awarded to her. To award the Former Wife her $385,475.87 share of the marital portion of the parties’ stocks and retirement accounts, the circuit court deducted from that amount the $213,263.99 already held by the Former Wife. The circuit court also deducted an additional $65,778.29, representing the amount by which the Former Husband’s indebtedness exceeded the Former Wife’s indebtedness. The result is a total additional distribution to the Former Wife of $106,433.59. The circuit court awarded this amount to the Former Wife as a lump sum payable from the Former Husband’s Publix ESOP by a QDRO.[5] The circuit court awarded the *735 Former Husband “the sole and exclusive use, ownership and possession of any and all remaining retirement, ESOP, 401(k), and/or deferred compensation aecount(s) with Publix Super Markets held in the Husband’s name free and clear from any claims of the Wife.”
After the entry of the stipulated final judgment, the Former Wife filed a motion for rehearing raising multiple issues, including challenges to some of the values assigned to her stocks and retirement accounts. Notably, the Former Wife did not challenge the distribution of the marital debt. The circuit court denied the Former Wife’s motion for rehearing, and neither party appealed the stipulated final judgment.
Up to this point, with the exception of the mishandling of the distribution of the marital debt, the course of the proceedings in this case was relatively straightforward and unexceptional. However, misunderstandings and miscalculations marked the proceedings that followed. We turn now to an examination of the events leading to the entry of the QDRO that is the subject of this appeal.
II. THE QDRO
On February 24, 2010, the Former Husband filed a motion to correct the Former Wife’s proposed QDRO. In his motion, the Former Husband argued that the Wife’s proposed QDRO improperly included premarital funds in the amount distributable to the parties from the Husband’s Publix ESOP. The circuit court held a hearing to address the Former Husband’s motion. At the hearing, Angela Shelby Young, the stock programs compliance specialist for Publix, testified that the Former Husband had an ESOP account and a 401 (k) SMART Plan account with Publix. However, at the time of the parties’ marriage in 1999, the Former Husband also had a profit ■ sharing plan. Effective December 31, 1999, the profit sharing plan was merged into the ESOP. Thus, in determining the premarital value of the ESOP account, the premarital value of the profit sharing plan also needed to be included. Ms. Young testified that the correct premarital value of the Husband’s ESOP account — including the merged profit sharing plan — was $163,294.57, not $82,901.15 as stated in the Stipulated Final Judgment.
After the hearing, the circuit court entered an order providing, in pertinent part, as follows:
7. As ordered in Paragraph R. of the Final Judgment, Publix Supermarkets, Inc., shall distribute the retirement and stock accounts specified therein, provided, however, the sum of $163,294.57 shall be deemed the former husband’s pre-marital asset and shall not be distributed by the QDRO. Counsel for the former wife shall cause an appropriate QDRO to be prepared, approved by Publix, and forwarded to the court for entry.
Although the order is less than clear on this point, Ms. Young’s testimony at the hearing leaves no doubt that the $163,294.57 premarital value applied only to the Former Husband’s ESOP account, and a separate premarital value of $21,293.65 applied to the Former Husband’s 401(k) account. Neither of the parties sought rehearing of this ruling, and the Former Wife has not challenged on appeal the circuit court’s _ ruling on the *736 premarital value of the Former Husband’s ESOP account.
After the entry of the order resolving the Former Husband’s motion to correct the Former Wife’s proposed QDRO, both parties submitted motions for entry of a QDRO and proposed QDROs. The circuit court heard the parties’ cross-motions for entry of a QDRO in January 2011. While Judge Ernest M. Jones entered the Stipulated Final Judgment and the order granting the Former Husband’s motion to correct QDRO, the January 2011 hearing was held before Judge James A. Yancey. Thus Judge Yancey was generally unfamiliar with the proceedings in the case up to that point and, in particular, with the effect of the earlier order that revised the premarital value assigned to the Former Husband’s ESOP account.
During the January 2011 hearing, the Former Wife’s counsel asserted that the effect of the earlier order correcting the premarital value assigned to the Former Husband’s ESOP account would be to substitute $163,294.57 for the $82,901.15 amount assigned in the Stipulated Final Judgment as the premarital value of the Former Husband’s ESOP account. The Former Wife’s counsel initially asserted that “after all of the math is done” the amount to be awarded to the Former Wife from the Former Husband’s ESOP account to complete the equitable distribution of the stocks and retirement accounts would be $66,236.49, “plus any gains or less any losses.” Notably, the Former Husband did not agree to the accuracy of the calculations made by the Former Wife’s counsel. But counsel for the Former Husband did not suggest an alternative figure.
We note that the figure of $66,236.49 mentioned initially by the Former Wife’s counsel is approximately correct. However, later in the hearing, Judge Yancey was led into making an erroneous calculation of the amount due the Former Wife from the Former Husband’s ESOP account.
After hearing additional argument concerning the earlier order changing the premarital valued assigned to the Former Husband’s ESOP account, Judge Yancey inquired of counsel as follows: “Now if I go back into looking at what is there, how much money does [the Former Husband] actually have in total?” The Former Wife’s counsel responded, “At the time this order was entered and prepared by [the Former Husband’s counsel] it was $487,927.35 total.” This figure was the postseparation value of the Former Husband’s ESOP account only. No one informed Judge Yancey that he needed to take into account the marital value of all of the parties’ stocks and retirement accounts in calculating the amount payable to the Former Wife from the Former Husband’s ESOP account.
Accordingly, Judge Yancey based his calculations on a misapprehension of the pertinent facts. Judge Yancey attempted to determine the parties’ distributive shares of the stocks and retirement accounts by using only the Former Husband’s ESOP account. He did not take into account the Wife’s stocks, the marital portions of her retirement accounts, or the Former Husband’s 401(k) account. Instead, Judge Yancey deducted $163,294.57 (the revised premarital value of the ESOP account) from the postseparation value, or $487,927.35, and arrived at a marital value of $324,632.78. He then divided this amount by two to arrive at the distributive shares of $162,316.39, and then deducted the Former Husband’s $65,778.29 credit for the marital debt from the Former Wife’s share to conclude that she was entitled to a distribution of $96,538.10. After making these calculations, Judge Yancey asked, “Is that the number everybody *737 comes out with?” The Former Wife’s counsel responded that she “agree[d] with the math.” In addition, although the Former Husband made a general expression of his doubts about the result, no one explained to Judge Yancey that his initial assumptions about how to make the necessary calculations were fundamentally flawed. Counsel for the Former Husband never offered an alternative calculation or agreed with the initial assertion made by counsel for the Former Wife that the amount payable to the Former Wife from the Former Husband’s ESOP account should be $66,286.49. In fact, counsel apparently agreed with the calculation resulting in a $96,588.10 distribution to the Former Wife.
After the January 2011 hearing, the circuit court entered an order ruling that “the Former Wife is entitled to $96,538.10 from the ESOP, to be transferred through a QDRO indicating said amount.” The circuit court also entered a QDRO consistent with its ruling.
The Former Husband filed a motion for rehearing, asserting that the circuit court had incorrectly calculated the Former Wife’s distributive share. In his motion for rehearing, the Former Husband argued that in order to equalize the division of the marital portion of the stocks and the retirement account, the Former Wife was obligated to pay him $10,093.90. Unlike at the hearing, the Former Husband set out his calculations in detail, describing his figures as “the appropriate way to have calculated the Wife’s entitlement to the Husband’s ESOP.” However, the Former Husband blundered in his calculations because he excluded the marital value of his 401 (k) account from the equitable distribution.
The Former Husband began his calculations by asserting that the marital portion of his ESOP account was $324,632.78. The Former Husband reached this figure by subtracting $163,294.57 (the premarital value) from $487,927.35 (the postseparation value). The Former Husband then added $152,651.90 (the marital portion of his 401(k)) to arrive at a subtotal of $477,284.68. Next, the Former Husband subtracted $213,263.99 (the marital value of the stocks and retirement accounts awarded to the Former Wife) to reach a subtotal of $264,020.69. Then, inexplicably, the Former Husband deducted the marital value of his 401(k) account — $152,-651.90 — effectively excluding the 401(k) account from the calculation of the equitable distribution. This deduction produced a subtotal of $111,368.79, which the Former Husband then divided by two, arriving at $55,684.39. After deducting the credit for his excess marital debt ($65,778.29), the Former Husband reached the conclusion that the Former Wife was obligated to pay him $10,093.90.
The circuit court denied the Former Husband’s motion for rehearing. This appeal followed.
III. THE PARTIES’ ARGUMENTS
On appeal, the Former Husband asserts for the first time that the amount properly payable to the Former Wife from his ESOP account is $66,232.05.[6] This figure is only $4.44 less than the figure initially mentioned by counsel for the Former Wife at the hearing on the proposed QDRO. The calculations necessary to arrive at the *738 $66,282.05 figure are as follows. The total marital value of the Former Husband’s ESOP account and his 401(k) is $477,284.68. Combining $477,284.68 with $213,263.99 (the marital value of the Former Wife’s accounts) yields a total subject to equitable distribution of $690,548.67. The next step is to divide $690,548.67 by two, resulting in a distribution to each party of $345,274.33. After deducting $213,263.99 (the value of the accounts already held by the Former Wife) and $65,778.29 (the credit for the Former Husband’s excess marital debt), the amount payable to the Former Wife from the Husband’s ESOP is $66,232.05. The Former Husband argues that the circuit court’s order, which requires the payment of $96,538.10 to the Former Wife, is inconsistent with the parties’ agreement and the Stipulated Final Judgment. The Former Husband also asserts that the circuit court’s order results in an unfair windfall to the Former Wife.[7]
IV. DISCUSSION
We agree with the Former Husband that the circuit court’s calculation of the amount payable to the Former Wife from the Former Husband’s ESOP account is in error. We also agree with the Former Husband’s appellate argument that the correct figure should be $66,232.05. Unfortunately, the Former Husband makes this argument for the first time on appeal. At the hearing on the motions for the entry of a QDRO, the Former Husband did not argue for the correct figure or agree with the substantially similar figure initially asserted by counsel for the Former Wife. The Former Husband also failed to alert the circuit court that its method of calculating the amount due to the Former Wife was fundamentally flawed. In his motion for rehearing of the circuit court’s order, the Former Husband argued — inaccurately— that the Former Wife was required to pay him $10,093.90.
Although the circuit court’s calculations are incorrect, the error is not fundamental. Because the Former Husband never presented the argument he makes now to the circuit court, we decline to consider the argument on appeal from the circuit court’s order. “In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.” Sunset Harbour Condo. Ass’n v. Robbins, 914 So.2d 925, 928 (Fla.2005) (quoting Tillman v. State, 471 So.2d 32, 35 (Fla.1985)); see also Aills v. Boemi, 29 So.3d 1105, 1108-09 (Fla.2010) (stating the requirements for proper preservation of error for appellate review).
V. CONCLUSION
Accordingly, we affirm the circuit court’s order. Before closing, we note an interesting factor that is not material to our decision. The circuit court’s two calculation errors result in a wash. The effect of the error in calculating the amount payable to the Former Wife from the Former Husband’s ESOP account is to award her an excess of $30,306.05 ($96,538.10 less $66,232.05). Nevertheless, the Stipulated *739 Final Judgment erroneously assigned to the Former Wife the Former Husband’s entire excess marital debt of $65,778.29 instead of one-half of that amount, or $32,889.15. The erroneous excess distribution resulting from the order on appeal essentially cancels out the error resulting from the earlier mishandling of the marital debt that the circuit court never corrected. The result is a distribution of the parties’ stocks, retirement accounts, and debt that is approximately equal.
Affirmed.
SILBERMAN, C.J., and ALTENBERND, J., Concur.

. As will be explained more fully later in this opinion, the circuit court subsequently entered an order revising the value attributed to the premarital portion of the Former Husband's ESOP account to $163,294.57.

. This figure reflects a minor mathematical error by the circuit court. Based upon the figures, the marital value should be $405,026.20.

. The circuit court’s calculation contains another small mathematical error. Based on the above figures, the correct amount to be distributed to each party should be $385,470.87.

. We note that neither of the parties' appellate attorneys represented them in the circuit court.

. "A QDRO is, in pertinent part, a 'domestic relations order ... which creates or recognizes the existence of an alternate payee’s right to, or assigns to an alternate payee the *735 right to, receive all or a portion of the benefits payable with respect to a participant under a [retirement] plan.' " DeSantis v. DeSantis, 714 So.2d 637, 638 (Fla. 4th DCA 1998) (first alteration in original) (quoting 29 U.S.C. § 1056(d)(3)(B)(i)).

. The Former Husband originally took the same position on appeal that he had taken in his motion for rehearing and argued that the circuit court should have entered an order directing the Former Wife to pay him $10,093.90. But upon this court's request for supplemental briefing, the Former Husband filed an amended initial brief making the above argument.

. In her answer brief, the Former Wife concluded that the QDRO is proper and- within the circuit court’s jurisdiction to issue and requested that "[t]he appeal should be dismissed and the trial court’s ruling upheld." She did not address the basis for the calculation of the $96,538.10 distribution amount. The Former Wife had the opportunity to file a supplemental brief in answer to the Former Husband’s supplemental brief, but she did not do so.