DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PATRICIA GUY MOULTROP,** individually, and **PATRICIA GUY MOULTROP,** as personal representative of **ESTATE OF GUY MOULTROP,**
Appellant,

v.

**GEICO GENERAL INSURANCE COMPANY,**
Appellee.

Nos. 4D19-225 and 4D19-1580

[September 9, 2020]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie S. Rowe, Judge; L.T. Case No. 502009CA042658.

Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, Todd S. Stewart of Law Office of Todd S. Stewart, P.A., Jupiter, and Richard M. Benrubi of Law Office of Richard M. Benrubi, P.A., West Palm Beach, for appellant.

B. Richard Young, Adam A. Duke, Brentt E. Palmer and Christopher R. Machado of Young, Bill, Boles, Palmer & Duke, P.A., Miami, for appellee.

MAY, J.

Plaintiffs[1] appeal the dismissal of the wife's consortium claim, and an adverse final judgment in a bad-faith case against their uninsured motorist's carrier ("UM carrier"). They argue a new trial is warranted because the trial court erred in: (1) dismissing the wife's loss of consortium claim; (2) excluding testimony that the UM carrier needed to adjust the wife's claim; (3) admitting the UM carrier's activity log note memorializing the plaintiffs' settlement offer of $500,000 at mediation; and (4) allowing the UM carrier to inform the jury that the husband cancelled

---

[1] These appeals include the wife's direct appeal from the dismissal of her consortium claim and a direct appeal by the personal representative of the husband's estate (the wife) from an adverse verdict in a bad faith trial. We consolidated the appeals in a June 25, 2019 order.

scheduled surgeries after the underlying negligence trial. They also argue the cumulative effect of these errors warrants a new trial. We agree with the plaintiffs on issues three and four. We therefore reverse and remand the case for a new trial.

### *The Accident*

The case arose from a sequential three-car collision. The driver of the first car made an abrupt lane change and stepped on the brakes, causing the second car to rear-end the first car. The third car, driven by the husband, collided with the second car. The driver of the first car was cited and blamed for the accident.

### *Between the Accident and the Negligence Trial*

Soon after the accident, on September 11, 2009, the plaintiffs sent a demand letter to their UM carrier for the full policy limits, but did not include the husband's medical records. Those records were sent a few days later. The UM carrier responded and requested additional information.

The plaintiffs again sent a letter demanding the policy limits, this time including the husband's medical records, the accident report, and other documentation. The UM carrier again denied the demand. The UM carrier also requested: (1) confirmation of coverage for the host vehicle, a tender of the available coverage or a denial of coverage; and (2) the husband's additional medical and hospital records. The UM carrier followed up and again requested confirmation of the host vehicle's coverage and the status of the husband's injuries and medical records.

The plaintiffs sent the UM carrier the requested documents and a third demand letter requesting the policy limits. On December 16, 2009, the UM carrier responded and requested the complete hospital records, billings, and treatment records from Atlantis Orthopedics. It also suggested that the husband had been at fault and it considered him to be from 75-100% responsible for the accident.

That same day, the plaintiffs sent the UM carrier a copy of the Delray Medical Center bill and medical records from Atlantis Orthopedics and Delray Medical Center. The accompanying letter advised the UM carrier the husband would sue if the policy limits were not paid on or before December 23, 2009.

On December 17, 2009, the husband filed a Civil Remedy Notice ("CRN") with the Department of Financial Services. The wife did not file a CRN. On December 22, 2009, the plaintiffs filed a complaint against the driver of the first vehicle and their UM carrier, alleging: 1) the driver caused the accident; 2) the UM carrier failed to pay the plaintiffs' uninsured motorist policy limits; and 3) the UM carrier and the driver must pay for the wife's loss of consortium.

The following day, the UM carrier offered the plaintiffs $5,000 to settle the case. The offer letter reiterated the husband was anywhere between 75% and 100% responsible and requested the complete billing for Atlantis Orthopedics to properly evaluate the claim. The UM carrier also requested an update on the husband's condition, any further treatment undertaken, and medical bills.

The plaintiffs sent the UM carrier a copy of the explanation of benefits from One Source EPO Health Plan reflecting medical bills totaling $37,040 and an outstanding medical lien of $12,705. A few days later, the UM carrier increased its settlement offer to $7,000. That same day, the plaintiffs explained they previously sent the updated medical records together with the medical bills and outstanding lien. The plaintiffs' letter challenged the UM carrier's assessment of liability percentages, arguing the accident investigator determined the driver of the first car was responsible for the accident, was cited for it, and an independent eyewitness confirmed the driver of the first car caused the accident.

The husband began physical therapy in February and forwarded the new records to the UM carrier. On February 24, 2010, the CRN expired. That same day, the UM carrier increased its offer to $30,000. In April, the husband was again treated for continuing knee and right foot pain; the medical records were forwarded to the UM carrier.

On May 7, 2010, the UM carrier sent a memo to its adjuster recommending a full tender of policy limits "in light of recent discovery, specifically [the independent eyewitness]'s testimony. . . and Dr. Norris' comments that [the husband] may need an additional excision/surgery." But, the UM carrier did not tender the policy limits.

On May 24, 2010, the plaintiffs sent a letter to the UM carrier demanding it pay all their damages because it failed to tender the policy limits before the CRN expired. The plaintiffs then demanded $500,000 to settle the case, explaining the husband incurred medical specials of approximately $25,000 and anticipated additional medical bills of approximately $75,000–$100,000. The plaintiffs demanded $500,000.

3

On June 2, 2010, the UM carrier offered the full policy limits of $50,000 in exchange for a dismissal with prejudice of the uninsured motorists' suit. At mediation two days later, the UM carrier reiterated its offer to tender the full policy limits; the plaintiffs rejected the offer. The rejection was recorded in the UM carrier's activity log as: "[l]ast [f]ormal [d]emand [w]as $500,000."

The negligence trial commenced. The jury returned a verdict of $362,704.50 in favor of the plaintiffs.[2] It placed 90% of the fault on the driver of the first car and 10% on the husband. The court reserved jurisdiction to conduct the bad faith trial.

### *The First Bad Faith Trial*

The bad faith complaint alleged both the husband and wife provided the UM carrier with a CRN.[3] The UM carrier answered and asserted affirmative defenses. Those defenses included: (1) the husband's claim was premature because the plaintiffs had not provided enough information to evaluate the claim; and (2) the plaintiffs' claim included violations not specified in the CRN.

The parties stipulated the jury would determine whether the UM carrier acted in bad faith by failing to settle the uninsured motorists claim and failed to settle the claim when it could and should have done so had it acted fairly and honestly.

The UM carrier moved for a judgment on the pleadings, asserting the wife could not bring a claim for statutory bad-faith pursuant to section 624.155, Florida Statutes (2009), because she did not serve a CRN.[4] The trial court denied the motion because the pretrial stipulation included the wife as a claimant. The UM carrier then moved for directed verdict, which was denied. But when the UM carrier's expert improperly testified on the issue of permanency, the plaintiffs moved for a mistrial, which the court

[2] The UM carrier later moved to conform the judgment to the policy limits, which the trial court granted.
[3] The plaintiffs amended their negligence complaint to add a bad faith claim against the UM carrier for its failure to tender policy limits within 60 days of the CRN's expiration. They later amended the complaint to allege the plaintiffs both provided the statutory CRN.
[4] At a pretrial hearing, the UM carrier's counsel conceded, "I will candidly admit that we did not spot on this issue . . . I mean, the reason that [the wife]'s in [the pretrial stipulation] and the reason this wasn't raised earlier is because, very frankly, we didn't spot it. . . ."

granted.

Following the mistrial, the UM carrier moved for summary judgment, on the wife's consortium claim because she had not filed a CRN. The trial court granted the motion and dismissed the wife's bad faith consortium claim.

### *The Second Bad Faith Trial*

Prior to the second bad faith trial, the plaintiffs filed three motions in limine to preclude the admission of: (1) the bad faith mediation summary letter; (2) evidence of comparative bad faith or that impugned the integrity of the underlying negligence verdict and/or plaintiffs' counsel; and (3) evidence of matters previously litigated in the negligence trial. The trial court granted all three motions, but permitted the UM carrier to introduce evidence of good faith.

The UM carrier also moved in limine to admit its activity log summarizing the mediation. The parties were directed to go through the activity log and mark their objections. The plaintiffs marked an "x" next to all entries they objected to as irrelevant or hearsay within hearsay, including the activity log note memorializing their $500,000 settlement offer. The entire activity log was introduced, subject to the parties' objections.

At the completion of the evidence, the plaintiffs moved to exclude the activity log note of the plaintiffs' mediation settlement offer of $500,000. The plaintiffs argued the note was inadmissible because it was: (1) a settlement offer; (2) irrelevant; and (3) more prejudicial than probative. The UM carrier responded the objection was untimely and the log was relevant to show that: (1) two days after the UM carrier tendered policy limits, the plaintiffs wanted ten times as much; and (2) to counter the husband's argument that he would have accepted policy limits until April or early May. The trial court overruled the objection.

In closing, the UM carrier argued:

> They offer the full $50,000 to the [p]laintiffs – to [the husband] and what do we see happens next? They go to mediation, they offer the $50,000 again and now the [p]laintiffs want $500,000, fifty times the policy limits and that's what this case is about. They want ten times as much.

5

The jury found in favor of the UM carrier. The plaintiffs moved for new trial, which the court denied. The plaintiffs now appeal.[5]

The wife appeals individually concerning the dismissal of her consortium claim. We affirm the dismissal because of her failure to file a CRN.

In the husband's appeal, he argues the trial court erred in overruling his motion to exclude the activity log note containing the $500,000 mediation settlement offer because it: (1) was inadmissible as part of settlement negotiations and confidential as part of the mediation process; (2) was irrelevant to the bad faith trial; (3) violated the trial court's orders on the motions in limine;[6] and (4) inflamed the jury. He argues the UM carrier's discussion of the settlement offer during closing argument compounded the error.

The UM carrier responds: (1) the activity log note was not a privileged mediation communication; (2) the settlement offer was relevant to the bad faith proceedings; and (3) the plaintiffs were not prejudiced by its admission.

"A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review, but the court's decision is limited by rules of evidence and the applicable case law." *Horowitz v. State*, 189 So. 3d 800, 802 (Fla. 4th DCA 2015).

As a preliminary matter, the UM carrier argues the husband's arguments were waived or unpreserved because they were not raised until his motion for new trial. We disagree and address the merits.

- *Relevance*

Bad faith claims center around whether the insurer has "investigate[d] the facts, give[n] fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Harvey v. Geico Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018) (quoting *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)).

---

[5] The husband died after the appeal was filed; his wife was substituted as personal representative of his estate.

[6] Because the plaintiffs failed to raise this argument in the trial court, it is not preserved for appeal. *See Franklin v. Patterson-Franklin*, 98 So. 3d 732, 738 (Fla. 2d DCA 2012).

"[T]he question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances standard.'" *Id.* (quoting *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004)) (alteration in original).

Here, the husband argued the UM carrier failed to tender the full policy limits in a timely manner. On February 24, 2010, the CRN expired without the UM carrier tendering its policy limits. The UM carrier did not offer the full policy limits until June 2, 2010. At mediation two days later, the UM carrier reiterated its offer to tender the full policy limits. The plaintiffs rejected the offer as noted in the activity log note.

It is well established that "the focus in a bad faith case is not on the actions of the claimant, but rather on those of the insurer in fulfilling its obligations to the insured." *Harvey*, 259 So. 3d at 7 (quoting *Berges*, 896 So. 2d at 677). The introduction of the plaintiffs' offer had nothing to do with whether the UM carrier acted in bad faith when it failed to tender its policy limits until June 2, more than three months after the CRN expired.

The UM carrier's introduction of the plaintiffs' settlement offer was solely to demonstrate that the plaintiffs, not the UM carrier, acted in bad faith. Because the activity log note was irrelevant, the court erred in admitting it into evidence. § 90.401, Fla. Stat. (2019).

- *Settlement Offer*

The husband next argues the settlement offer was inadmissible, pursuant to section 90.408, Florida Statutes (2019). That section provides:

> Evidence of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise, is inadmissible to prove liability or absence of liability for the claim or its value.

§ 90.408, Fla. Stat. (2019).

"A fundamental premise for the application of this rule is that the offer to compromise must relate to the claim disputed in the lawsuit." *Rease v. Anheuser-Busch, Inc.*, 644 So. 2d 1383, 1388 (Fla. 1st DCA 1994). "The purpose of the statute is to allow counsel to communicate freely in an effort to settle litigation without the risk that any statement made will be used against his clients." *Rubrecht v. Cone Distributing, Inc.*, 95 So. 3d 950, 956

(Fla. 5th DCA 2012).

The note reflected settlement negotiations between the same parties involved in the bad faith trial. For this additional reason, the activity log note should not have been admitted.

- *Mediation Communications*

The husband last argues the activity log note was inadmissible because it was a privileged mediation communication pursuant to section 44.405, Florida Statutes (2019). The statute provides, "all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel." *Id.* The statute defines a mediation communication as "an oral or written statement, or nonverbal conduct intended to make an assertion, by or to a mediation participant made during the course of a meditation, or prior to mediation if made in furtherance of a mediation." § 44.403(1), Fla. Stat. (2019).

The UM carrier responds the activity log note could not be a mediation communication because both the plaintiffs and the UM carrier were parties to the mediation. It relies on *Bowdler v. State Farm Mutual Automobile Insurance Co.*, 2:13-cv-539-FtM-38CM, 2014 WL 2700672 (M.D. Fla. Jun. 13, 2014) (holding activity logs containing summaries and analyses of communications in underlying mediation fell outside privilege because both parties participated in the mediation). The UM carrier's reliance on *Bowdler* however is misplaced. There, the court addressed whether the summaries were discoverable, not their admissibility.

A mediation party is defined as "a person participating directly, or through a designated representative, in a mediation and a person who: (a) is a named party; [or] (b) is a real party in interest. . . ." § 44.403(3), Fla. Stat. (2019). "Thus, the mediation privilege . . . protects disclosure of communications that were made during mediation from those who were not participants in the mediation process." *Strong v. GEICO Gen. Ins. Co.*, 8:16-cv-1757-T-36JSS, 2017 WL 1006457, at *3 (M.D. Fla. Mar. 15, 2017). Where the parties in the litigation were participants to the mediation in the underlying action, a party is precluded from asserting the mediation privilege. *Id.*; *see also Bowdler*, 2014 WL 2700672, at *3.

Here, the activity log note was introduced into evidence and published to a third party *not* in attendance at mediation—the jury. In so doing, the activity log was published to a party outside the ambit of those privileged to see it under the statute. *Drummond v. Zimmerman*, 19-81532-CIV, 2020

WL 1845003, at *1 (S.D. Fla. April 13, 2020) ("Inclusion of mediation statements in public court filings is a violation of [the Florida Mediation] Act."). For this third reason, the activity log note should not have been admitted.

Because the activity log note was irrelevant and ran afoul of the rules of evidence concerning settlement negotiations and the mediation privilege, the trial court erred in overruling the husband's objection to its admission. We therefore reverse and remand the case for a new trial.

*Reversed and Remanded.*

WARNER, J., and HILAL, JENNIFER, Associate Judge, concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

9